**UNITED STATES of America**

**v.**

**Frank M. SHUCH and Nancy Shuch.**

**Civ. No. H–90–840 (JAC).**

United States District Court,
D. Connecticut.

Feb. 28, 1992.

H. Gordon Hall, Asst. U.S. Atty., New Haven, Conn., for the U.S.

Ira B. Grudberg, Jacobs, Grudberg, Belt & Dow, New Haven, Conn., for defendant Frank M. Shuch.

Patrick M. Noonan, Delaney, Zemetis, Donahue, Durham & Noonan, Wallingford, Conn., for defendant Nancy Shuch.

Hugh F. Keefe, Lynch, Traub, Keefe and Errante, New Haven, Conn., for Anderson Kill Olick & Oshinsky.

Frank S. Occhipinti, Anderson Kill Olick & Oshinsky, New York City, for the Former Official Committee of Unsecured Creditors of Colonial Realty Co.

## RULING ON MOTION FOR SANCTIONS [1]

JOSÉ A. CABRANES, District Judge:

The question of whether to impose sanctions on attorneys and their clients is almost always a difficult one for a judge. As in this case, the issues presented are often complicated, and the decision is close. Three pleadings by a creditors' committee, seeking to modify orders of this court in proceedings in which the committee had no obvious right or basis to intervene, are the subject of this significant and altogether plausible motion for sanctions. However, following extensive briefing, oral argument held on September 9, 1991, and an evidentiary hearing held on January 27, 1992, I conclude that in the circumstances presented here sanctions are neither required nor appropriate.

### Background

This case was initiated by the United States by filing a Verified Complaint for Injunctive Relief on October 5, 1990 pursuant to 18 U.S.C. § 1345 ("section 1345").[2] On that date, the court granted an *ex parte* restraining order at the government's request, and the parties subsequently agreed to the entry of a preliminary injunction. *See* Preliminary Injunction and Order (filed Oct. 11, 1990) ("October 11, 1990 Order"). The effect of the October 11, 1990 Order was to freeze certain assets of defendants pending disposition of federal criminal charges against Frank Shuch, who was later arrested and indicted on forty counts of bank fraud, mail fraud and conspiracy. *United States v. Frank Shuch*, Criminal No. N–90–76 (JAC) (D.Conn.) (the "criminal case"). At his arraignment on those charges on December 19, 1990, the court entered a Second Amended Order Setting Conditions of Release (filed Dec. 20, 1990) ("December 20, 1990 Order").

In the motion now pending before the court, defendants seek an award of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), 28

1. In light of Frank M. Shuch's death on February 11, 1992, it is assumed that any interest in the pending motion for sanctions now rests with defendant Nancy Shuch and the estate of Frank M. Shuch.

2. Section 1345 provides that if a person is "violating or about to violate" the federal mail, wire or bank statutes, "the Attorney General may commence a civil action in any Federal court to enjoin such violation." In addition, Section 1345 requires that

[t]he Court shall proceed as soon as practicable to the hearing and determination of such an action, and may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought.

U.S.C. § 1927, and/or the inherent power of the court against the Official Committee of Unsecured Creditors of Colonial Realty Company ("Creditors' Committee") and/or their attorneys, members of the law firm of Anderson Kill Olick & Oshinsky, P.C. ("Anderson Kill"),[3] for their attempt to modify the October 11, 1990 Order in this case and the December 20, 1990 Order in the criminal case. Specifically, defendants object to two sets of papers filed in this court and one set of papers filed in the United States Bankruptcy Court for the District of Connecticut (Krechevsky, C.J.) ("Bankruptcy Court").

The first set of objectionable papers, an application for "Order to Show Cause and Temporary Restraining Order," was filed in this court on March 7, 1991 ("March 7, 1991 Application") on behalf of the Creditors' Committee by Attorney Frank S. Occhipinti, a "member" of Anderson Kill.[4] I did not enter either the proposed order to show cause or the proposed temporary restraining order. Rather, on March 8, 1991 I entered an order directing counsel to the Creditors' Committee to serve its "Order to Show Cause and Temporary Restraining Order together with the Affidavit of Frank S. Occhipinti" on all counsel of record in both this case and the related criminal case by no later than March 11, 1991. After defendants submitted briefs responding to the papers on March 14 and March 15, 1991, Attorney Occhipinti withdrew the March 7, 1991 Application pursuant to a letter to this court dated April 1, 1991 and filed April 4, 1991.

Meanwhile, on March 28, 1991 Attorney Occhipinti filed the second set of objectionable papers on behalf of the Creditors' Committee *and* the debtor, Colonial, in the Bankruptcy Court in connection with an adversary proceeding—specifically, he filed an Application for a Temporary Restraining Order and Motion for Preliminary Injunction ("March 28, 1991 Application"), seeking relief similar to that requested in this court in the March 7, 1991 Application. Like the March 7, 1991 Application, the March 28, 1991 Application sought to prevent Nancy Shuch from utilizing any of her assets pending the outcome of proceedings in Bankruptcy Court. However, virtually all of defendants' assets were already subject to the supervision of this court pursuant to the October 11, 1990 Order in this action and the December 20, 1990 Order in the criminal case. The two applications filed by the Creditors' Committee, therefore, sought to alter or modify orders of this court.

The Bankruptcy Court denied the March 28, 1991 Application and scheduled a hearing on the motion for a preliminary injunction on April 3, 1991. However, at the request of counsel for Colonial on April 2, 1991, the Bankruptcy Court postponed the hearing on the motion for a preliminary injunction indefinitely. At a hearing in the Bankruptcy Court held on April 23, 1991, Chief Judge Krechevsky indicated that he would not entertain the motion for a preliminary injunction until after he had ruled

---

**3.** On September 14, 1990, five petitioning creditors of Colonial Realty Company ("Colonial"), Connecticut Bank and Trust Company, N.A., Bank of Boston—Connecticut, Mechanics Savings Bank, People's Bank, and Burritt Interfinancial Bancorporation, filed involuntary petitions against Colonial under the Bankruptcy Code. Involuntary petitions were also filed against Colonial's general partners, Jonathan Googel and Benjamin Sisti, and Colonial's Chief Financial Officer, Frank M. Shuch. An order for relief was entered in Colonial's case under Chapter 7 of the Bankruptcy Code on September 27, 1990, and the case was converted to Chapter 11 of the Bankruptcy Code on the same date. The Creditors' Committee was appointed on October 16, 1990 in the Chapter 11 proceeding, and an order was entered on that date permitting it to retain Anderson Kill as its counsel.

**4.** Anderson Kill is organized as a New York professional corporation. Each of the New York attorneys, save for those "of counsel," is a stockholder in the professional corporation owning a single share of stock. Therefore, each full time active attorney employed by the corporation functions as a proprietary "member" or "partner," regardless of age or experience. *See* Affidavit of Arthur S. Olick in Response to the Court's Order to Show Cause Dated December 13, 1991 and in Further Opposition to the Motion for Sanctions (filed Jan. 16, 1992) ("Olick Affidavit"). Accordingly, it is clear that "member" and "partner," as those terms are used to describe attorneys at Anderson Kill, are not at all the equivalent of "partner" as the term is generally used to describe senior attorneys in law firms organized as partnerships.

on the outstanding motion for stay and expressed some hesitancy over hearing the motion for a preliminary injunction at all. In response, Attorney Arthur Olick of Anderson Kill, as counsel for the Creditors' Committee, withdrew the motion for a preliminary injunction and indicated at the hearing that it would be re-filed in this court.

On April 30, 1991, defendants filed the pending motion for sanctions in this court seeking sanctions against attorneys of Anderson Kill and/or the Creditors' Committee for filing the March 7, 1991 Application in this court and the March 28, 1991 Application in the Bankruptcy Court. Before responses were filed or a hearing could be had on the motion for sanctions in this court, on May 3, 1991 Attorney Occhipinti returned to this court on behalf of the Creditors' Committee and filed the third set of objectionable papers (the second in this case), a motion for preliminary injunction and pre-judgment order of attachment ("May 3, 1991 Motion"). The May 3, 1991 Motion sought to alter orders of this court in the same manner as the earlier applications; it elicited the Response of the United States of America to Motion for Preliminary Injunction and Pre-Judgment Order of Attachment (filed May 15, 1991) and defendants' joint Memorandum in Opposition to Motion for Preliminary Injunction and Prejudgment Order of Attachment (filed May 15, 1991).

While efforts were made to schedule a hearing on the pending motions in this case, including the May 3, 1991 Motion, there were significant developments in the Bankruptcy Court proceedings. Specifically, on May 24, 1991 Colonial's Chapter 11 bankruptcy case was converted to a case under Chapter 7 pursuant to section 1112(a) of the Bankruptcy Code. As a result, the Creditors' Committee, which had been established pursuant to Chapter 11, was dissolved, and Attorney Hal M. Hirsch was appointed interim trustee of Colonial (the "Trustee").[5]

After several adjournments requested by Attorney Occhipinti, a hearing on his May 3, 1991 Motion and on the motion for sanctions was finally scheduled for September 9, 1991.[6] In his final request for an adjournment, Attorney Occhipinti represented that since the Creditors' Committee had been dissolved, it could no longer go forward with the May 3, 1991 Motion and that the Trustee would have to make a determination whether and how to proceed with the motion. See Agreed Motion of the Official Committee of Creditors of the Debtor Colonial Realty Company for a Second Adjournment of the Motion for Sanctions (filed July 25, 1991) at 2, ¶ 3.

In summary, Attorney Occhipinti filed three dubious sets of papers on behalf of the Creditors' Committee, two in this court and one in the Bankruptcy Court. The first, the March 7, 1991 Application, was filed in this court because the Creditors' Committee was concerned that the October 11, 1990 Order and the December 20, 1990 Order would expire before the debtor commenced an adversary proceeding in which the Creditors' Committee could seek relief

5. The Trustee was appointed permanent trustee of Colonial pursuant to section 702(d) of the Bankruptcy Code on July 12, 1991. However, the bankruptcy cases of Colonial, Googel and Sisti were consolidated pursuant to an August 9, 1991 order (the "consolidation order") of the Bankruptcy Court on August 24, 1991, and Mr. Hirsch was appointed interim trustee of the consolidated estate. He has since been appointed permanent trustee and operates the business of the consolidated debtors pursuant to section 721 of the Bankruptcy Code.

The Bankruptcy Court's consolidation order was affirmed on appeal by this court on October 24, 1991, and a further appeal to the United States Court of Appeals for the Second Circuit is pending.

6. The Agreed Motion of the Official Committee of Unsecured Creditors of the Debtor Colonial Realty Company for an Adjournment of the Motion for Sanctions (filed May 30, 1991) was granted absent objection June 3, 1991. The Creditors' Committee was given until June 20, 1991 to respond to the motion for sanctions. The Agreed Motion of the Official Committee of Unsecured Creditors of the Debtor Colonial Realty Company for a Second Adjournment of the Motion for Sanctions (duplicates of which were filed June 20, 1991 and July 25, 1991) was granted upon consent of the parties on July 26, 1991. The hearing on both defendants' motion for sanctions and on the May 3, 1991 Motion was postponed until September 9, 1991.

in the Bankruptcy Court. The March 7, 1991 Application was withdrawn once the adversary proceeding was filed because a joint motion of the debtor and the Creditors' Committee—namely, the March 28, 1991 Application—sought the same relief as the March 7, 1991 Application. The March 28, 1991 Application was withdrawn after the Bankruptcy Court expressed a reluctance to hear it because it manifestly sought to alter orders of the District Court. Attorney Occhipinti then returned to this court and filed the May 3, 1991 Motion, since the Creditors' Committee still had not obtained the relief it believed was needed and the Bankruptcy Court did not want to hear the motion. After briefing by all the parties, this third and final motion was abandoned by Attorney Occhipinti because his client was effectively no longer in existence. The Trustee represented to this court in a telephone call on September 6, 1991 that he did not intend to adopt the May 3, 1991 Motion. Accordingly, at the hearing held on September 9, 1991, the court denied the May 3, 1991 Motion. The remainder of the September 9, 1991 hearing was devoted to the Motion for Sanctions. Although the Motion for Sanctions had been filed before Attorney Occhipinti filed the May 3, 1991 Motion, defendants directed their arguments for sanctions toward that motion as well, contending that their original brief for sanctions was applicable to all three sets of papers filed by Attorney Occhipinti. After lengthy oral argument by counsel for defendants and Attorney Occhipinti, I reserved decision and requested that the parties file supplemental briefs. I also requested that Attorney Occhipinti advise members of the Creditors' Committee of their right, severally and jointly, to file a brief in response to the Motion for Sanctions.[7]

After extended and careful consideration of the Motion for Sanctions and the full record of this case, the court concluded that the record of this matter was not complete on the question of the responsibility of Anderson Kill or senior members or other attorneys in that firm for the actions taken in this case by Attorney Occhipinti. Accordingly, I entered an Order to Show Cause on December 13, 1991 ("Order to Show Cause") scheduling an evidentiary hearing for January 27, 1992 and ordering Anderson Kill and Attorney Occhipinti to show cause why Anderson Kill or individual members thereof should not be held responsible in whole or in part for any or all of the alleged misconduct of Attorney Occhipinti. *See* Order to Show Cause ¶ 5.[8]

Following the evidentiary hearing held on January 27, 1992, the Motion for Sanctions was submitted for decision.

## DISCUSSION

Defendants claim that the disputed pleadings filed by Anderson Kill on behalf of the Creditors' Committee—the March 7,

---

7. Pursuant to the order of this court, defendants filed a Supplemental Memorandum in Support of Motion for Sanctions on September 13, 1991 ("Defendants' Sept. 13, 1991 Memorandum"), accompanied by an Affidavit in Support of Motion for Sanctions. A Memorandum of Law of Anderson Kill Olick & Oshinsky in Opposition to the Motion of Frank M. Shuch & Nancy Shuch for Sanctions Pursuant to Fed.R.Civ.P. 11 was submitted just before the hearing on September 9, 1991 and formally filed on September 16, 1991 ("Anderson Kill's Sept. 16, 1991 Memorandum").

After the hearing, Attorney Occhipinti filed a Supplemental Memorandum in Opposition to Motion for Sanctions on September 20, 1991 ("Anderson Kill's Sept. 20, 1991 Memorandum"). In addition, on September 30, 1991, representatives of the dissolved Creditors' Committee filed a Memorandum of the Official Committee of Unsecured Creditors in Opposition to

Motion for Sanctions and Requesting an Evidentiary Hearing ("Creditors' Committee Memorandum").

8. Attorney Hugh Keefe entered an appearance on behalf of Anderson Kill on December 13, 1991. In accordance with paragraphs 6 and 7 of the Order to Show Cause, and an extension of time granted on January 7, 1992, Anderson Kill filed a Memorandum of Law in Further Opposition to the Motion for Sanctions ("Anderson Kill's Jan. 16, 1992 Memorandum"); a witness list of Anderson, Kill, Olick, & Oshinsky P.C.; and five affidavits on January 16, 1992. Defendants' Memorandum in Compliance with the Court's Order to Show Cause was filed on January 22, 1992 ("Defendants' Jan. 22, 1992 Memorandum") and the Reply Memorandum of Law in Further Opposition to Motion for Sanctions was filed on January 24, 1992 ("Anderson Kill's Jan. 24, 1992 Memorandum").

1991 Application in this court, the March 28, 1991 Application in the Bankruptcy Court, and the May 3, 1991 Motion in this court—had no chance of success because, among other things, the Creditors' Committee (1) had no standing to intervene in this case under 18 U.S.C. § 1345; (2) failed to obtain permission to intervene in this case pursuant to Rule 24(c) of the Federal Rules of Civil Procedure; (3) failed to obtain permission from the Bankruptcy Court to file the March 7, 1991 Application in this court; and (4) could not seek to modify an order in a criminal case. In addition, defendants charge that the pattern and timing of Attorney Occhipinti's filings evidence "vexatious and bad faith conduct for which sanctions should be imposed upon Attorney Occhipinti, and to the extent the court deems appropriate, upon other members of Anderson Kill." Defendants' Jan. 22, 1992 Memorandum at 8.

## I. *Standards for Imposing Sanctions*

Defendants request that sanctions be imposed pursuant to Rule 11, 28 U.S.C. § 1927, and/or the inherent powers of the court against Attorney Occhipinti and/or other members of Anderson Kill. Each of these three bases for imposing sanctions has "a remarkably different history and requires separate analysis." *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1343 (2d Cir.1991).

### A. Rule 11

By its terms, Rule 11 requires that an attorney, before signing a pleading, make a "reasonable inquiry" to form a belief that the pleading is "grounded in fact and is warranted under existing law or a good faith argument for the extension, modification, or reversal of existing law." Pursuant to Rule 11, "[i]f a pleading, motion, or other paper is signed in violation of this rule, the court ... *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction...." (emphasis added).

■ Under the law of this Circuit, a court applying a "test of objective reasonableness" should impose sanctions where "it is clear that: (1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of success; and (3) no reasonable argument has been advanced to extend, modify or reverse the law as it stands." *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir.), *cert. denied*, 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); *see also Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504 (2d Cir.1989). Courts should resolve all doubts in favor of the signer, but should impose sanctions when " 'it is patently clear that a claim has absolutely no chance of success.' " *Id.* (citations omitted). The court imposing Rule 11 sanctions need not make a finding of bad faith. *Id.; see also Eastway Constr. Corp. v. New York*, 762 F.2d 243, 253 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). "Simply put, subjective good faith no longer provides the safe harbor it once did." *Id.* Thus, "[i]f it is clear that the action was destined to fail based on the facts and existing precedent, and ... no reasonable argument could be advanced to change or extend the present law, Rule 11 *requires* a sanction." *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 706 (2d Cir.1990) (emphasis added).

■ Because a Rule 11 violation occurs when the offending paper is signed, "a court must determine whether the certification requirement has been flouted by focusing on the situation existing when the paper was signed." *United States v. International Bhd. of Teamsters*, 948 F.2d at 1344. "The Court must not allow hindsight to skew its judgment." *Id.* However, "[i]f Rule 11 has been violated, sanctions are mandatory." *Id.* (citing Fed.R.Civ.P. 11 (sanctions "shall" be imposed)).

■ The parties agree that a court may impose Rule 11 sanctions only upon the individual attorney who signs papers, and not his law firm. *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123–27, 110 S.Ct. 456, 457, 107 L.Ed.2d 438 (1989) (reversing imposition of sanctions against a law firm instead of the

individual attorney who signed the pleadings). In this case, the only individual who signed papers was Attorney Occhipinti. Therefore, Rule 11 sanctions in this case may be imposed only upon Attorney Occhipinti, the individual who signed the papers, and upon his client, the Creditors' Committee.

### B. 28 U.S.C. § 1927

Another basis for sanctions that defendants urge the court to consider is 28 U.S.C. § 1927 ("section 1927"), which provides that

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

It is clear that "[b]y its terms, [section] 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics." *United States v. International Bhd. of Teamsters,* 948 F.2d at 1345. The purpose of section 1927 is "to deter unnecessary delays in litigation." H.R.Conf.Rep. No. 1234, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S.C.C.A. 2716, 2782; *see United States v. International Bhd. of Teamsters,* 948 F.2d at 1345. "Bad faith is the touchstone of an award under this statute." *Id.* (citing *McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 23 (2d Cir. 1990)). Our Court of Appeals has held that "an award under [section] 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *United States v. International Bhd. of Teamsters,* 948 F.2d at 1345. Finally, "[i]n contrast with sanctions under Rule 11, awards pursuant to [section] 1927 may be imposed only against the offending

attorney; clients may not be saddled with such awards." *Id.* (citing *Oliveri,* 803 F.2d at 1273).

### C. Inherent Power

■ The third basis for sanctions offered by defendants is the inherent power of this court. "This power stems from the very nature of courts and their need to be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (quoting *Chambers v. NASCO, Inc.,* —— U.S. ——, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991)). The power to assess costs and attorneys' fees against either the client or his attorney where a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'" is a component of a court's inherent power. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)).

"The Supreme Court has cautioned that because of the 'very potency' of a court's inherent power, it should be exercised 'with restraint and discretion.'" *United States v. International Bhd. of Teamsters,* 948 F.2d at 1345 (quoting *Chambers,* 111 S.Ct. at 2132). Indeed, our Court of Appeals has "always required a *particularized showing* of bad faith to justify the use of the court's inherent power." *Id.* (emphasis added). *See generally, J.M. Cleminshaw Co. v. City of Norwich,* 93 F.R.D. 338, 351–58 (D.Conn.1981) (discussing inherent power of the court to impose sanctions).

### II. *Should Sanctions be Imposed in this Case?*

I turn now to the issue before the court—whether sanctions are required or appropriate in the circumstances presented here. "'[S]anctions under Rule 11 must be treated and determined separately from those that may be imposed under [section] 1927.'" *United States v. International Bhd. of Teamsters,* 948 F.2d at 1346 (citing *Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1350, 1359 (3d Cir.1990)). Therefore, I first

consider whether Rule 11 sanctions should be imposed against Attorney Occhipinti and/or the Creditors' Committee. I then consider whether sanctions should be imposed against Attorney Occhipinti or other members of Anderson Kill pursuant to section 1927 and/or the inherent powers of this court.

### A. Attorney Occhipinti—Rule 11

■ As noted earlier, Attorney Occhipinti is the individual who signed the March 7, 1991 Application, the March 28, 1991 Application and the May 3, 1991 Motion. Defendants raise some serious questions regarding the sufficiency of Attorney Occhipinti's inquiry into the basis for his papers. However, while it is clear that Attorney Occhipinti's methods of operation leave something to be desired, I must focus on the situation that existed at the time that he signed and filed the papers. *United States v. International Bhd. of Teamsters*, 948 F.2d at 1344. As I note below, *see infra* at Section II. C., the situation at that time was unusually complicated as a result of the existence of numerous proceedings and interested parties, and the Creditors' Committee was understandably (and properly) concerned about the dissipation of Colonial's assets.[9]

Applying a test of objective reasonableness and upon a full review of the record, I find that in the circumstances presented here, Rule 11 does not require the imposition of sanctions against Attorney Occhipinti for his attempts to intervene on behalf of the Creditors' Committee in this case by signing and filing the three sets of papers at issue here. I conclude that (1) a reasonable inquiry into the basis for the papers was made, (2) there was a *chance* of success under existing precedent, or, at the very least, (3) reasonable arguments could be and were advanced to extend, modify or reverse the law as it stands. *See International Shipping Co., S.A.*, 875 F.2d at 390; *Cross & Cross Properties, Ltd.*, 886 F.2d at 504.

Defendants contend that the papers filed by Attorney Occhipinti were deficient in a number of ways under clear and existing law, and that if Attorney Occhipinti had made a reasonable inquiry, he would have realized his pleadings had no chance of success. I shall consider briefly the main problems identified by defendants.

First, it is not clear, as defendants argue, that the Creditors' Committee lacked, or even needed, "standing to intervene" in this action. No one disputes that this action is brought pursuant to section 1345 and that, according to its terms, that statute authorizes only the Attorney General to initiate the action. *See supra* note 2. Nonetheless, it is not entirely clear that the Creditors' Committee needed "standing to intervene" in order to seek relief from this court in this action. Indeed, there is a distinction between the right to initiate a suit and the right to intervene. Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil Procedure ("Rule 24(a)").[10] The Creditors' Committee may

---

**9.** The record is clear that the Government was also concerned about the dissipation of assets allegedly belonging to Colonial and that members of the Office of the United States Attorney expressed this concern to members of Anderson Kill on a number of occasions. *See* Affidavit of Martin F. Becker (filed Jan. 16, 1991) ("Becker Affidavit") ¶¶ 17, 19, 21, 22; Affidavit of Frank Occhipinti (filed Jan. 16, 1991) ("Occhipinti Affidavit") ¶¶ 3, 4, 5, 9, 10, 12, 13, 14. Indeed, in the view of Anderson Kill, the Government thought the matter was "urgent" and was actually encouraging the Creditors' Committee to take some action with respect to assets that were subject to the orders of this court. *See, e.g.,* Becker Affidavit ¶ 21 ("there was a clear urgency to ... conversations" between Anderson Kill and then U.S. Attorney Richard N. Palmer); Occhipinti Affidavit ¶ 10 ("Mr. Palmer told me

that he was very concerned that the Shuchs were incurring large fees for professionals retained with funds in the Account and that if action were not taken promptly, he feared that there would be nothing left for creditors."). Assistant United States Attorney H. Gordon Hall, who was present at the hearings on September 9, 1991 and January 27, 1992, did not dispute any of the representations in the affidavits filed by Anderson Kill or any representations made in open court by members of Anderson Kill regarding conversations between members of the Office of the United States Attorney and members of Anderson Kill.

**10.** Rule 24(a) provides that

[u]pon timely application anyone shall be permitted to intervene in an action: (1) when a

have been able to establish under Rule 24(a)(2) that (1) it has an interest relating to the property or transaction involved in the proceeding; (2) the disposition of the action may, as a practical matter, impair that interest; and (3) its interests may not otherwise be adequately represented. *See United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir.1984) (discussing amendments which simplified Rule 24(a)). Amendments to Rule 24(a) have "focused on abandoning formalistic restrictions in favor of 'practical considerations' to allow courts to reach pragmatic solutions to intervention problems." *Id.* Certainly, these considerations indicate that the court had some flexibility in considering whether the Creditors' Committee had a right to intervene in this action. In any event, it would not have been clear to Attorney Occhipinti, at the time he signed the papers, that the court would refuse such intervention; the right to intervene had, after all, been granted in a case in which the government was a party and had the exclusive right to initiate the action. *Trbovich v. United Mine Workers*, 404 U.S. 528, 536–37, 92 S.Ct. 630, 635, 30 L.Ed.2d 686 (1972). The Supreme Court held in *Trbovich* that intervention by union members in a suit by the Secretary of Labor presented no interference with the objectives of a statute in which suit by the Secretary of Labor was the "exclusive remedy for violation of that statute." 404 U.S. at 536–37, 92 S.Ct. at 635. Similarly, there is no reason to believe that the Creditors' Committee's efforts to intervene necessarily would disturb or impede the objectives of section 1345.[11] Simply put, Attorney Occhipinti had reason to believe, in light of

Rule 24(a)(2) and *Trbovich*, that the court might allow intervention in this case.

Second, it is not clear, as defendants argue, that the papers were fatally deficient in light of Rule 24(c). Rule 24(c) requires that an intervenor serve a motion to intervene upon the parties to the action, along with a pleading setting forth the claims for which intervention is sought. In this case, there is no dispute that Attorney Occhipinti did not file a motion to intervene before submitting an application for relief. In response to questions at oral argument regarding the apparent failure to comply with the clear terms of Rule 24(c), Attorney Occhipinti reported that there was great urgency in placing the application before this court.

While I do not countenance disregard for clear procedural requirements, I cannot conclude that the failure of the Creditors' Committee to strictly comply with the rules governing intervention was necessarily fatal to their papers, or in any event, worthy of sanctions under Rule 11. The March 7, 1991 Application gave adequate notice of the basis of the Creditors' Committee's claims and the relief sought, and was adequate enough to permit the court to consider if it had established a right to intervene under Rule 24(a). Moreover, by the time the March 28, 1991 Application and the May 3, 1991 Motion were filed, the Creditors' Committee and the debtor in Bankruptcy Court had filed an adversary proceeding with a pleading setting forth the claims and relief which the Creditors' Committee sought in each of the three sets of papers.[12] Accordingly, even in the absence of a formal motion for intervention, it was

statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In this case, Anderson Kill is obviously relying upon Rule 24(a)(2) by invoking "an interest relating to the property or transaction which is the subject of the action" as the basis for the Creditors' Committee's intervention. *See*

Anderson Kill's Jan. 16, 1991 Memorandum at 10.

**11.** Professor David Shapiro has observed that "[o]nce a government action has been initiated ... private parties may have important stakes in its outcome and significant information to offer regarding the violations charged and the most appropriate form of relief." 89 *Harv.L.Rev.* 1174, 1187 (1976).

**12.** Defendants do no dispute Anderson Kill's representation that the adversary complaint was served upon all counsel, as well as on this court.

clear at the time, and is clear now, that the Creditors' Committee was seeking some kind of intervention in this case and that the court had a sufficient basis upon which to determine whether intervention should be allowed. *See Gatz v. Southwest Bank of Omaha,* 836 F.2d 1089, 1093 (8th Cir. 1988) (no formal application for intervention filed, but parties to suit sufficiently apprised of bank's interest in litigation and court within its discretion to grant intervention); *Spring Constr. Co., Inc. v. Harris,* 614 F.2d 374, 376–77 (4th Cir.1980) (proper approach for court considering intervention by a party is to disregard "nonprejudicial technical defects" and determine if papers set forth "sufficient facts and allegations" to apprise parties of intervenor's claims); *see also* 7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1914 and cases cited in nn. 13–14 thereto (1986). In light of the discretion arguably available to the court, Attorney Occhipinti could have reasonably believed that this court would consider his papers, even in the absence of a formal motion for intervention.

■ Third, it is also not accurate to state, *see, e.g.,* Memorandum of Defendant Frank Shuch in Opposition to Order to Show Cause (filed Mar. 15, 1991) at 16–17, that Attorney Occhipinti and the Creditors' Committee were not permitted to seek temporary relief in this court without obtaining permission from the Bankruptcy Court. It is true, of course, that under the Bankruptcy Code a creditors' committee has a "qualified right ... to initiate suit with the approval of the bankruptcy court." *In re STN Enterprises,* 779 F.2d 901, 904 (2d Cir.1985). Generally, a court should allow a creditors' committee to initiate proceedings "only when the trustee or debtor in possession unjustifiably failed to bring suit or abused its discretion in not suing to avoid a preferential transfer." *Id.* It bears repeating that the Creditors' Committee was not seeking to initiate a suit in this case, but was seeking merely to intervene. Furthermore, although it would have been advisable for the Creditors' Committee and Attorney Occhipinti to obtain permission from the Bankruptcy Court to intervene in these proceedings, I simply cannot conclude that in the absence of such prior authorization, this court was required, in the circumstances presented here, to determine that the Creditors' Committee had no right to intervene or otherwise request relief in this court. In other words, the failure of the Creditors' Committee to obtain permission from the Bankruptcy Court did not necessarily mean that they had absolutely no chance of success in this court. *Cf. In re Chemical Separations Corp.,* 32 B.R. 816, 819 (Bankr.E.D.Tenn.1983) (creditors' committee allowed to proceed even though it filed adversary proceeding in bankruptcy court without first seeking approval of bankruptcy court). Therefore, sanctions are neither appropriate nor required under Rule 11 on these grounds.

Fourth, the main concern of defendants and the government in opposing the applications submitted by Attorney Occhipinti seemed to be that the Creditors' Committee was seeking modification of not only the October 11, 1990 Order in this case, but the December 20, 1990 Order setting conditions of release in the criminal case. *See, e.g.,* Defendants' Jan. 22, 1992 Memorandum at 10; Government's Response to Order to Show Cause and Temporary Restraining Order and Affidavit of Frank S. Occhipinti (filed Mar. 15, 1991) at 4. In determining whether Rule 11 sanctions are appropriate, I need not consider whether this court would have decided to modify the order in the criminal case at the request of the Creditors' Committee. Rather, it is sufficient for the court to conclude that, in light of the law of this Circuit and the circumstances of this case, Attorney Occhipinti's efforts to have the court effectively reconsider the order in the criminal case, through this related proceeding, were not sanctionable.

Our Court of Appeals has specifically held that "when the persons seeking attachment are the alleged victims of a defendant's criminal conduct, ... they must be given the opportunity to seek attachment of all available assets, including funds posted as bail." *Landau v. Vallen,* 895 F.2d 888, 890 (2d Cir.1990). In this

case, the Creditors' Committee was specifically seeking to halt the use or dissipation of funds believed to have been fraudulently transferred from Colonial, which funds were being used pursuant to the December 20, 1990 Order setting the conditions of Mr. Shuch's release. *See* May 3, 1991 Motion ¶ 6. The Creditors' Committee alleged that "[t]hese funds may be among the only ... funds which will be available to satisfy a money judgment entered [in] the adversary proceeding in the Bankruptcy Court. Accordingly, the disposition of the actions pending before this Court may impair or impede the [Creditors'] Committee's ability to protect its constituent's interests." *Id.* Clearly, in the context of the Colonial proceedings, it is appropriate to view the creditors as "victims" of the criminal activities of which Mr. Shuch was charged in the criminal case; at the least, it is understandable that members of the Creditors' Committee and their attorneys viewed the creditors as "victims." In light of the teaching of our Court of Appeals that "courts in the civil context should be particularly sensitive to the rights of victims of crimes when they seek compensation from those accused of inflicting injuries," *Landau*, 895 F.2d at 891, Attorney Occhipinti had every reason to believe when he signed the papers that this court would, at the very least, entertain his argument on the behalf of the Creditors' Committee in this case. In any event, it was not "clear" that the Creditors' Committee's attempt to attach the bail proceeds in the criminal case had absolutely no chance of success, *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d at 390, and therefore, Rule 11 sanctions

against Attorney Occhipinti are neither required nor appropriate.

Fifth, and finally, I note that Anderson Kill has repeatedly invoked the All Writs Act, 28 U.S.C. § 1651(a),[13] as the basis of authority upon which this court could have entertained any of the papers Attorney Occhipinti filed and could have provided any relief from or modification of *any* orders the court had entered if it served the interests of justice.[14] While courts should not encourage the invocation of the broad authority of the All Writs Act in every instance in which counsel is called upon to be innovative in asserting the interests of his clients, I am mindful of the simple truth stated by Attorney Olick, a senior member of Anderson Kill who supervised Attorney Occhipinti, that "all the unsecured creditors ... were in need of relief, and since [the Bankruptcy Court] couldn't hear it ... there[ ] [had] to be a place for a remedy." Transcript of January 27, 1992 Hearing (filed Feb. 3, 1992) ("Tr. 1/27/92") at 59.[15] Even if there were arguably more appropriate means and methods by which the Creditors' Committee could have entered this "place" to seek the relief it believed was necessary, asking the court to invoke its inherent authority under the All Writs Act in circumstances such as those facing the Creditors' Committee was not conduct deserving censure, much less sanctions.

## B. Creditors' Committee—Rule 11

■ In the Motion for Sanctions, defendants seek sanctions against the Creditors' Committee and/or their attorneys. However, at oral argument on September 9, 1991, counsel for Nancy Shuch, Attorney Patrick M. Noonan, represented that a member of the Creditors' Committee—

---

**13.** 28 U.S.C. § 1651(a) provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

**14.** *See, e.g.,* May 3, 1991 Motion ¶ 7; Anderson Kill Sept. 16, 1991 Memorandum at 14; Anderson Kill Sept. 20, 1991 Memorandum at 2; Anderson Kill Jan. 16, 1992 Memorandum at 23 n. 5.

**15.** Attorney Olick also offered this rather uncomplicated and sensible view of the issue that

the Creditors' Committee sought to place before the court:

> [I]n my view if the Shuchs were wrong about that money, if they had stolen the money from me, I don't care what they did with it in the court, I still have a right to go in and get some relief. If they hadn't told Judge Cabranes about the facts and the ownership, he couldn't make a judgment with respect to it. If I thought it was my money, I should go in and tell him. And that's what I thought we were trying to do.

Tr. 1/27/92 at 59.

namely, People's Bank—had contacted him prior to the September 9, 1991 hearing. In that phone call, Attorney Noonan apparently indicated to People's Bank that he would not press for sanctions against the Creditors' Committee. Transcript of September 9, 1991 Hearing (filed Oct. 25, 1991) ("Tr. 9/9/91") at 39–40. In fact, no members of the now-defunct Creditors' Committee were present or represented at the September 9, 1991 hearing or at the January 27, 1992 hearing.[16]

Inasmuch as I have determined that Rule 11 sanctions should not be imposed against Attorney Occhipinti for signing the three sets of papers at issue here, I see no basis for concluding that Rule 11 sanctions should be imposed against the party he represented, the Creditors' Committee. In any event, even if Rule 11 sanctions against Attorney Occhipinti were appropriate here, they could not have been imposed against the Creditors' Committee in the circumstances presented here.

Although Rule 11 sanctions may be imposed against "the person who signed [the pleading], a represented party, or both," the Court of Appeals has held that "a party represented by an attorney should not be sanctioned for papers signed by the attorney unless the party had actual knowledge that filing the paper constituted wrongful conduct, e.g., the paper made false statements or was filed for an improper purpose." *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1474 (2d Cir. 1988), *rev'd. in part, on other grounds*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). In other words, "[w]here a represented party either did not knowingly authorize or participate in the filing of a paper that violated Rule 11, sanctions against that party are not appropriate." *Id.* Even if sanctions must be awarded against counsel who signed the papers, they may not be appropriate against the represented party. *See, e.g., Greenberg v. Hilton Int'l Co.*, 870 F.2d 926, 934, 939 (2d Cir.1989), *remanded on reh'g*, 875 F.2d 39 (2d Cir.1989) (plaintiff should not share in her counsel's liability for sanctions because

she did not have "actual knowledge of the wrongful conduct by her counsel").

In this case, Attorney Occhipinti specifically represented at oral argument on September 9, 1991 that the Creditors' Committee authorized him as its counsel to take steps in the interest of the Creditors' Committee, but that the "mechanics" were left to him and other members of Anderson Kill. Tr. 9/9/91 at 42–43. When asked by the court whether members of the Creditors' Committee were aware of the particular decision to intervene in *this* action, Attorney Occhipinti indicated that they were given copies of the papers *after* they had been filed. *Id.* at 43. He did not disagree with the court's understanding at oral argument that the Creditors' Committee was not aware of the filing in this court *before* it occurred. *Id.* 43–44. The representations of Attorney Occhipinti are consistent with the understanding of members of the Creditors' Committee as stated in their brief. They report that "the Unsecured Creditors' Committee was unaware of the format of such applications and was also unaware of the fact that such applications had been made until such time as they had actually been made." Creditors' Committee Memorandum at 3. Further, they claim that they had only discussed "general strategy" with counsel and "had not been provided by ... counsel with any details regarding its proposed plan of action." *Id.* Defendants have not disputed these facts in any of their briefs, nor did counsel for defendants take issue with Attorney Occhipinti's version of these facts at oral argument on September 9, 1991. The undisputed facts reveal, therefore, that Rule 11 sanctions against the now-defunct Creditors' Committee or its individual members would not be appropriate in this case, even if such sanctions had been imposed against Attorney Occhipinti.

C. Attorney Occhipinti or Other Members of Anderson Kill—Section 1927 and Inherent Power of the Court

■ Sanctions against Attorney Occhipinti or other members of Anderson Kill

---

16. With leave of the court, members of the Creditors' Committee filed the Creditors' Committee Memorandum to address the possibility

that sanctions could be imposed against them. *See supra* note 7.

are not warranted under either section 1927 or the inherent powers of this court because, in sum, I cannot conclude that Attorney Occhipinti or any other member of Anderson Kill "multiplie[d] the proceedings in [this] case unreasonably and vexatiously," or otherwise acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." I have previously described the circumstances of this case as "particularly awkward [and] convoluted ... with criminal proceedings in the District Court, civil proceedings in the District Court, [and] important complicated ... proceedings in the Bankruptcy Court." Tr. 9/9/91 at 27. This is not an unusual view of the situation: it is evident to all concerned that the numerous court proceedings involving Colonial and the assets of defendants are extraordinarily complicated. In light of the nature of the proceedings, the court has been faced with any number of innovative efforts by counsel to protect the interests of their clients. Upon a review of the record in its entirety, particularly the persuasive testimony of members of Anderson Kill, there is simply no basis upon which to conclude that they proceeded in bad faith in filing the three sets of papers at issue in the pending motion for sanctions. Rather, it seems clear that they proceeded on the basis of their good faith judgment that their clients were entitled to relief *somewhere*—if not in the Bankruptcy Court, then presumably in the District Court. It simply cannot be said that the law was clear on how they should proceed in these circumstances or that to choose the methods they employed over those suggested by defendants evinced bad faith.[17]

## CONCLUSION

For the reasons stated above, the Motion for Sanctions (filed Apr. 30, 1991) is denied.

It is so ordered.

---

**17.** Inasmuch as I have determined that sanctions are not appropriate, I do not reach the question presented by the concededly "unique" structure of Anderson Kill. *See* Tr. 1/27/92 at 63; *see also supra* note 4. In the event Rule 11 sanctions had been required, the peculiar character of Anderson Kill would have posed special problems in assessing sanctions against the responsible parties. The court would have been required to impose Rule 11 sanctions upon Attorney Occhipinti as the signer of the pleadings, but would have been unable to impose Rule 11 sanctions on the firm of Anderson Kill. *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. at 123–27, 110 S.Ct. at 457–59. This is true even though the record is clear that Attorney Occhipinti was a young "member" of Anderson Kill who was filing papers under the direction and with the consent of more senior "members" of the firm. This problem may be obviated by the proposed amendments to Rule 11, which would allow Rule 11 sanctions to be imposed upon law firms. *See Federal Rules: Major Changes Sought by Judicial Conference Working Group,* 60 U.S.L.W. 2158 (Sept. 10, 1991). Until and unless such amendments are adopted, the court may only impose sanctions on other non-signing, but nonetheless responsible, members of the firm under Section 1927 or the inherent power of the court, both of which require some finding of bad faith.