**Donald A. MULLER and Marilyn Muller, Plaintiff,**

v.

**SHERBURNE, POWERS & NEEDHAM, and Karl Hirschman, Esq., Defendants.**

**No. 90 Civ. 3260 (WK).**

United States District Court, S.D. New York.

Sept. 15, 1992.

**538**

Jeffrey A. Oppenheim, Kane, Kessler, Proujansky, Tullman, Preiss, & Nurnberg, P.C., New York City, for plaintiffs.

Shira A. Scheindlin, Herzfeld & Rubin, P.C., New York City, for defendants.

## OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

This is an action by two former clients charging their former attorneys with malpractice. In June of 1991 plaintiffs moved for summary judgement on the complaint, while defendants cross moved for summary judgment dismissing the complaint and for judgment in their favor on a counterclaim

for unpaid legal fees. By Opinion and Order dated October 4, we granted summary judgment for defendants on all claims. On March 9, 1992, the Second Circuit affirmed that order.

Now before us is a motion by defendant lawyers for an order imposing sanctions against plaintiffs and their counsel on the ground that both the complaint and certain papers submitted in relation to the cross motions for summary judgment were signed in violation of Fed.R.Civ.P. 11 (Rule 11). At all relevant times plaintiffs were represented by members of the firm of Kane, Kessler, Proujansky, Tullman, Preiss & Nurnberg ("Kane, Kessler") The individual attorney whose name appears as signatory on the complaint is one S. Reid Kahn, a partner in the firm; and the attorney who acted as lead counsel for the plaintiffs and who signed the papers submitted in connection with the summary judgment motions is Ellyn D. Kessler, also a partner.[1]

On May 8, 1992 we heard oral argument on this motion for sanctions. For the reasons that follow, it is granted in part and denied in part.

## BACKGROUND

The relevant facts are more fully set forth in our October 1991 Opinion and the Second Circuit's March 1992 Affirmance. *See Muller and Muller v. Sherburne, Powers and Needham, et ano.* (S.D.N.Y.1991), 1991 WL 210933, 1991 U.S. Dist. LEXIS 14320, *aff'd without published opinion*, 962 F.2d 3 (2d Cir.1992). Familiarity with both those opinions is presumed, and we here repeat only those facts essential to the disposition of the instant motion.

Sometime in early 1989 the shareholders of a closely-held corporation known as U–Vend, Inc. ("U–Vend") decided to sell their stock to a corporation known as VendAmerica. In connection with this transaction defendant lawyers were retained to represent U–Vend, its shareholders, and its employees. Plaintiff Marilyn Muller ("Mrs. Muller") was then the owner of ten percent

1. In connection with the instant motion, Mr. and Mrs. Muller, Kahn, and Kessler are repre-

sented by Jeffrey A. Oppenheim, Esq., also a member of the firm of Kane, Kessler.

of the stock of U–Vend, and her husband, plaintiff Donald Muller ("Mr. Muller") was employed as Vice President and Sales Manager of that company.

Over the course of several months in the summer and fall of 1989 the defendant attorneys negotiated the terms of a Stock Purchase Agreement with the principals of VendAmerica. In relevant part, this agreement provided that on the closing date, in exchange for her stock, Mrs. Muller would receive from VendAmerica: (1) a bank check for $281,048.28 and (2) a promissory note in the amount of $9,492.90 plus interest. The agreement anticipated a closing date in January 1990, and it was signed by both Mr. and Mrs. Muller, in their respective capacities as employee and shareholder of U–Vend.[2] Mrs. Muller also separately executed a stock power agreement that authorized defendant lawyers to transfer ownership of her shares to VendAmerica at the closing.

Unbeknownst to his attorneys (the defendants in the present action who are now moving for Rule 11 sanctions), Mr. Muller, on several occasions prior to the close of the Stock Purchase Agreement, met with representatives of VendAmerica and negotiated a side agreement whereby in exchange for his investing $250,000 in VendAmerica he would receive an ownership interest in that company and a contract for his continuing employment at U–Vend after the close of the stock purchase agreement. Mr. Muller did not seek defendants' advice in connection with these negotiations, nor did he advise them of the existence of such negotiations or alert them to the possibility that they would, in any way, affect Mrs. Muller's interests.

On January 24, 1990 defendant lawyers and certain officers of U–Vend, including Mr. Muller, attended the closing of the Stock Purchase Agreement. Also present were the principals of VendAmerica, and VendAmerica's counsel, Steven M. Davis, Esq., a member of the firm of Werbel, McMillian and Carnelutti ("Werbel"). During this meeting, defendant lawyers were presented with a letter to be signed by Mr. Muller, which authorized VendAmerica to retain $250,000 of the sum due Mrs. Muller pursuant to the Stock Purchase Agreement. In relevant part, this letter provided:

Of the $281,048.28 due to me or my wife from VendAmerica pursuant to the Stock Purchase Agreement, I have requested VendAmerica/U–Vend, as part of the buy-out of my wife's existing stock position, to pay by check only $31,048.28. The remaining $250,000 can be retained by VendAmerica, Inc. as a result of VendAmerica's issuance to me on this date of a $250,000 Exchangeable Note, receipt of which is hereby acknowledged.

Upon seeing this letter, defendant lawyers informed Mr. Muller that he should have brought his wife to the closing to verify that she consented to this change in the terms of the consideration due her for her stock. Mr. Muller then placed a call to his residence, identified the recipient of the call as his wife, and handed the phone to the lawyers. A female on the phone assented to the terms of the letter. Thereafter Mr. Muller signed the letter and the close of the purchase agreement was finalized, with Mrs. Muller receiving $250,000 less than the amount specified in the Stock Purchase Agreement.

Despite the fact that the above-described letter recites that Mr. Muller acknowledged receipt of the Exchangeable Note, Mr. Muller did not receive that note until after the close of the Stock Purchase Agreement had been completed. Defendant lawyers never saw, and were not asked by Mr. Muller to review, the Exchangeable Note.

Subsequent to the January 24 closing, defendant lawyers were informed that Mrs. Muller had not been the individual to whom they had spoken by phone, and that the person Mr. Muller had identified to them as his wife was instead his daughter, whom he had instructed to "pretend you are mommy". Within two weeks of January 24, Mr.

---

2. The Stock Purchase Agreement so described is in fact a series of documents executed in the period September 1989 through January 1990, as more fully explained in our October 4 Opinion.

Muller's employment at U–Vend was terminated by VendAmerica.

On May 10, 1990 Mr. and Mrs. Muller, represented by Ellyn Kessler, Esq., a partner in the Kane Kessler firm, commenced an action against U–Vend, VendAmerica, and VendAmerica's attorneys, Steven Davis and the Werbel firm, alleging securities and common law fraud. On the following day Mr. and Mrs. Muller, represented by S. Reid Kahn, another Kane Kessler partner, filed the instant complaint.

The gravamen of this complaint is the allegation that the defendants were derelict in their duties as counsel for the Mullers in failing: (1) to examine the elaborate text of the Exchangeable Note referred to in the January 24 letter; (2) to advise the Mullers of the deficiencies in the terms of said note; and (3) to point out to the Mullers that their interests were in conflict with those of the remaining principals and shareholders of U–Vend who were also represented by defendant lawyers. *See* Compl. ¶ 9, 15, 16, 18, 23. In support of these charges, the complaint includes the following allegation of fact (Compl. ¶ 12):

¶ 12. Defendants were informed prior to the closing of the stock purchase that VendAmerica and Plaintiffs had reached a verbal agreement by which VendAmerica would retain a substantial portion of the proceeds due to plaintiffs from the sale of plaintiffs' stock interest ...

Approximately two months after the above-described pleadings had been filed, the Mullers amended their securities law complaint against U–Vend, *et al.* The amended pleadings in that action include the allegation that with respect to Mr. Muller's agreement to invest $250,000 in VendAmerica, Davis and the Werbel firm had represented to him that "he did not need counsel because they were his attorneys", and that the Mullers relied on this representation to their detriment. *See Muller and Muller v. U–Vend, Inc. et al.* 90 Civ. 2958 (MJL), Amended Compl. ¶¶ 29–31 [3].

Discovery in the instant action revealed the following additional information. At her deposition, Mrs. Muller stated that she had given her husband complete authority to act on her behalf in all matters here relevant, including the authority to "reinvest" $250,000 of the money she was to receive pursuant to the Stock Purchase Agreement. *See* MM Depos. at 9, 23–24, 29, 40. In his deposition, Mr. Muller admitted that he had not sought defendant lawyers' advice in connection with the agreement he had made with VendAmerica to "reinvest" $250,000 of his wife's money. In addition, he testified that his reason for deceiving his lawyers into thinking they had been speaking with Mrs. Muller during the closing of the Stock Purchase Agreement was that he believed that if they did not think they were receiving his wife's express consent, they would not have gone ahead with the closing. DM Depos. at 151.

Shortly after completion of the Mullers depositions, defendants requested that plaintiffs discontinue this action with prejudice. *See* Scheindlin Affid. ¶ 4. Plaintiffs' counsel, Ellyn Kessler, declined so to do, and as above stated, moved for summary judgment. In support of that motion, plaintiffs did not dispute any of the above-described facts, however, they argued that the agreement which Mr. Muller had negotiated with VendAmerica was an aspect of the Stock Purchase Agreement. Accordingly, they proceeded on the theory that, as a matter of law, defendants owed to them a duty of due care, which in the instant circumstances included at a minimum, reviewing the Exchangeable Note to make sure it conformed to the Mullers' expectations of what consideration was due them in lieu of $250,000, and advising the Mullers as to the legal ramifications of the documents exchanged at the closing. *See* Kessler. Affid., annexed to the 6/24/91 Notice of Motion.

As previously stated, by Opinion and Order dated October 4, we ruled that on the basis of facts before us no reasonable juror

---

**3.** This amended complaint is set forth in its entirety as Exhibit I to the Affidavit of Karl Hirschman submitted in support of defendants' motion for summary judgment. By Stipulation dated January 18, 1991 the claims against the Werbel firm and Steven M. Davis were dismissed, without prejudice. *See* Hirschman Affid. at Exh. E.

could conclude that defendants had committed legal malpractice. In so holding, we found that Mr. Muller had affirmatively acted to prevent the defendants from being, in any way, involved in the private deal he had arranged with VendAmerica, and that there was no basis on which one could conclude that defendants owed him a duty of due care with respect to matters pertaining to that transaction. We also found that, as Mrs. Muller had herself testified that she had given her husband actual authority to act on her behalf with respect to all matters here relevant; "she, like any other principal, was bound by the actions of her agent, and has no complaint against the defendants who followed his instructions".

Plaintiffs appealed this decision, and while this appeal was pending, defendants filed the instant motion for sanctions. By letter dated November 18, Jeffrey Oppenheim, Esq., plaintiffs' present counsel (and counsel for plaintiffs' attorneys Kahn and Kessler), requested an extended briefing schedule for this motion, in part on the ground that "the motion raises the potential for conflict between this firm and our clients [the Mullers], and it is necessary for our clients to have adequate time to review that potential conflict with us and determine whether they require separate counsel". By memorandum endorsement dated November 19, we granted this request, and directed, in relevant part, that:

> Plaintiffs' answering papers (by whatever lawyer or lawyers plaintiffs or their present counsel elect to proceed) shall be filed on or before January 6, 1992 ...

We subsequently agreed to adjourn the return date until after the Court of Appeals had rendered its decision on the merits of our October 4 Order.

In its unpublished opinion, 962 F.2d 3, affirming our October 4 Order, the Court of Appeals ruled as follows:

> The malpractice claim fails for the fundamental reason that the law firm was not representing the Mullers in connection with the side agreement for the investment of Mrs. Muller's funds and for Mr. Muller's employment, and on the undisputed evidence, Mr. Muller, who was acting as Mrs. Muller's agent with respect to the primary stock purchase transaction, could not have reasonably thought that the law firm was undertaking any representation of the Muller's with respect to the side agreement ... Rejecting the malpractice claim on summary judgment was entirely warranted.

Although defendants had moved for sanctions pursuant to Fed.R.App.P. 38. in connection with the appeal, the Court declined to impose them. In relevant part, its opinion provided:

> "The [defendants] ... present a substantial claim for appellate sanctions ... Though we decline to impose sanctions, we caution the Mullers that their pursuit of frivolous or vexatious litigation in the District Court or this Court will hereafter expose them to the distinct risk of substantial financial sanctions". [Slip op. at 4].

### The Instant Motion

In support of the instant motion for sanctions, defendants contend that the complaint and papers submitted in connection with plaintiffs' motion for summary judgment contained allegations which were not well grounded in fact, and were at times inaccurate or false. Defendants relatedly argue that if counsel for plaintiff had performed a reasonable inquiry into the facts, as required by Rule 11, the facts so revealed would preclude any competent attorney from asserting, let alone moving for summary judgment on, a claim of legal malpractice. Defendants suggest that an appropriate sanction in the instant circumstances would be to direct the Mullers, Kahn, and Kessler, jointly and severally, to reimburse defendants for the attorneys' fees, expenses, and "lost time charges" which they incurred in connection with the instant action, an amount totalling $113,777.14.

In opposition, the Mullers and their attorneys Kahn and Kessler, assert that all papers and pleadings in this action were legally sufficient. More particularly, they argue that, notwithstanding our ruling and

**542**

that of the Second Circuit to the contrary, the position that Mr. Muller's negotiations with VendAmerica were part of the stock purchase agreement for which defendants owed a duty of due care was not without either factual or legal foundation.

Kahn filed an affidavit in connection with this defense[4]. In relevant part, it asserts that prior to the filing of the complaint both he and Kessler "met with the Mullers" and obtained information concerning the facts underlying this claim (4/2/92 Kahn Affid. at ¶ 7). This affidavit does not specify when or how many times they so met or precisely what the Mullers said during such meeting or meetings. Most significantly, it does not in any way suggest that the Mullers were not at all times completely candid with the interviewing attorneys. In the most relevant part, the affidavit asserts (*id.* at ¶¶ 10, 17, 20) (emphasis added):

> 10. [After interviewing the Mullers], *[b]ased upon our review of the facts which were ultimately presented to the Court in the Mullers' motion for summary judgment,* my partner [Kessler] and I then consulted two of our partners ... We asked them for their opinions concerning the manner in which an attorney should have acted in the Sherburne firm's position at the closing. Both ... agreed that, at the very least, acceptable standards of legal practice would require an attorney to bring the potential problems with the Note and employment agreement to Mr. Muller's attention ...
>
> \* \* \* \* \* \*
>
> 17...We believe that responsible attorneys should have immediately advised Mr. Muller that *an oral promise to employ Mr. Muller* ... would be difficult, if not impossible to enforce, and that the Exchangeable Note received by the Mullers was an *illusory obligation.*
>
> \* \* \* \* \* \*
>
> 20...Although it is true that Mr. Muller misrepresented to the attorney that it was Mrs. Muller on the telephone, that

misrepresentation did not, in our opinion, appear to diminish the meritorious basis, in law or fact, for proceeding with the action.

April 2, 1992 Kahn Affid.

At oral argument, Oppenheim, counsel for both the Mullers and Kahn and Kessler, informed us that he had fully advised the Mullers of the potential conflict of interests which exists in joint representation in the instant circumstances. He stated, moreover, that Mr. Muller had expressly consented to such representation, and had stated that for financial reasons he would not retain another lawyer in connection with this motion.

## DISCUSSION

■ We note at the outset that we are in no position to draw any inference from the Second Circuit's decision not to impose sanctions in connection with the appeal, or from any indication the Court's opinion may have given as to its views concerning plaintiffs' conduct. Fed.R.App.P. 38, in contrast to the mandatory language of Rule 11, provides that it is within the discretion of the Court of Appeals to impose or refrain from imposing sanctions when it determines that an appeal is frivolous. In its entirety, Appellate Rule 38 provides:

> If a court of appeals shall determine that an appeal is frivolous, it *may* award just damages and single or double costs to the appellee. (emphasis added).

Although the language employed by the Court in cautioning the Mullers that "their pursuit of frivolous or vexatious litigation ... will hereafter expose them to the ... risk of substantial ... sanctions" appears to us to demonstrate the Court's discontent with the Muller's conduct, it does not directly address the questions before us: Whether or not it was objectively unreasonable for Kahn either to commence this action or for Kessler to decline to discontinue it after the completion of discovery. Ac-

---

**4.** We have been informed that Kessler is no longer a member of the Kane Kessler firm. *See* 4/2/92 Tullman Affid. at 2 n. 1. She filed no affidavit in connection with this Rule 11 motion.

cordingly, we turn to our consideration of these questions.

■ In relevant part, Rule 11 mandates that sanctions be imposed against an attorney and/or party when "it appears that a pleading [or other paper] has been interposed for any improper purpose ...". *Eastway Construction Corp. v. City of New York* (2d Cir.1985) 762 F.2d 243, 254. Although we recognize that a court can rarely conclude that a legal position is entirely frivolous, *see Pierce v. F.R. Tripler* (2d Cir.1992) 955 F.2d 820, 830; *Stern v. Leucadia* (2d Cir.1988) 844 F.2d 997, 1005–6; *Oliveri v. Thompson* (2d Cir.1986) 803 F.2d 1265, 1277; *cf. Zaldivar v. City of Los Angeles* (9th Cir.1986) 780 F.2d 823, 830 ("It is obvious from the text of the Rule that the pleader need not be correct in his view of the law", the dispositive question is whether or not "[t]he pleader, at a minimum, ... [had] a 'good faith argument' for his or her view of what the law is or should be"), we find that this is precisely such a case.

Mr. Muller entered into a conspiracy with one or more persons, including his daughter, to deceive his lawyers in order to prevent them from finding out what he had been up to in connection with his side agreement negotiations with VendAmerica. Having succeeded in that conspiracy and kept his lawyers from learning anything about his side agreement (*e.g.* whether or not it contained an "oral promise to employ Mr. Muller" or whether the Exchangeable Note was an "illusory obligation"), he turns around and sues them for not advising him about those dangers. One does not need much legal education to realize that such conduct cannot be tolerated by any law existing today, or likely ever to evolve in a civilized community.

Accordingly, the relevant question is: did the Mullers' attorneys, Kahn and Kessler, know about Mr. Muller's conspiracy when Kahn filed the complaint and when Kessler refused to discontinue the action? We find as a fact that each of them did have such knowledge at the relevant time. In the first place, Kahn submitted a detailed affidavit specifying, among other things, that

he and Kessler questioned the Mullers before filing the complaint. He does not even suggest that either of the Mullers concealed any material facts from him; and Kessler submitted no affidavit at all. In the second place Kahn and Kessler's partner, Jeffrey Oppenheim, at oral argument on this motion specifically conceded that the firm knew about Mr. Muller's deceptive conduct but asserted that it was his legal opinion that such conduct constituted only "contributory negligence".

Disregarding for the moment Oppenheim's admissions at oral argument, it is axiomatic that where a party to a lawsuit—at least in a civil as opposed to criminal case—has knowledge of relevant facts and fails to disclose them, the trier of fact may presume such facts do not exist. Here, if either of the Mullers had withheld any relevant fact when meeting with Kahn and Kessler, each of the latter would certainly know it and could have told us. We therefore find as a fact that each of them was fully aware of the conduct which made it impossible for either of the plaintiffs to have any claim against the defendant lawyers.

Turning to Oppenheim's contention that it was his considered judgment that Mr. Muller's deceptive conduct could be passed off as contributory negligence, that—to put it bluntly—is frivolous. Anyone who had taken an elementary course in tort law would have realized that one cannot be said to have "negligently" instructed one's daughter to enter into a conspiracy to impersonate her mother for the purpose of lying to one's attorneys.

As Kahn also knew that Mrs. Muller had unqualifiedly authorized her husband to act on her behalf, we find that he knew when he filed the complaint that neither of his clients had a just claim, and that the filing was for the improper purpose of instituting a frivolous law suit. By the same token, Kessler was aware of the same facts, and knew that her affidavit in support of a motion for summary judgment was filed for the improper purpose of continuing a baseless lawsuit. These conclusions mandate that sanctions be imposed against

both Kahn and Kessler, and render wholly irrelevant their tortuous arguments about what might have been defendants' obligation to Mr. Muller had not his conspiratorial conduct prevented them from having any knowledge about his problems [5].

 Turning to the question of sanctions against Mr. and Mrs. Muller, Rule 11 clearly permits imposition of sanctions against a party. *See* Rule 11 (the language of the Rule expressly provides: "[If the rule is violated] the court ... shall impose upon the person who signed ... [the offensive document], a represented party, or both, an appropriate sanction ...."); Advisory Committee Notes to the 1983 Amendment ("Even though it is the attorney whose signature violates the rule, it may be appropriate ... to impose a sanction on the client"). In this Circuit, a prerequisite to the imposition of sanctions against a party is a determination that "the party had actual knowledge that filing the paper constituted wrongful conduct, *e.g.*, the paper made false statements or was filed for an improper purpose". *Calloway v. Marvel Entertainment Group* (2d Cir.1988) 854 F.2d 1452, 1474–75, *rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989); *see Cross & Cross Properties v. Everett Allied Co.* (2d Cir.1989) 886 F.2d 497, 505. As our above statements indicate with respect to the conduct of Mr. Muller, if the rule does not warrant sanctions in his case, we can not imagine a situation where it would.

 With respect to Mrs. Muller, while we could apply to her the presumption that her silence indicates the absence of a defense, we decline so to do. Mrs. Muller seems to us to have so completely delegated to her husband all responsibility for her affairs, including her interests in this suit, that we have no firm conviction as to what extent, if any, she actually knew what he was doing with respect to this action. Accordingly, we can not say that we are per-suaded that the state of her knowledge warrants Rule 11 sanctions.

## CONCLUSION

In conclusion, we find that pursuant to Rule 11 sanctions must be imposed against both Kahn and Kessler and Mr. Muller, and that the measure of damages should be all expenses incurred by the defendant lawyers from the moment the complaint was filed. The problem of assessment of those expenses will be referred to a magistrate judge by separate order. However with respect to Mr. Muller, although we can not conceive of what defense he might have, we recognize that we have not had the benefit of any argument on his behalf and feel remiss in having failed personally to interrogate him as to his understanding of the conflict of interest between him and his present attorneys. We accordingly stay entry of judgment against him for thirty days within which time he may either appear *pro se* and make any statement he wishes in his own defense or retain an attorney so to do. Upon either of those events, we shall determine an appropriate course of action. If he fails to do anything, judgment will be entered against him.

The motion for sanctions against Mrs. Muller is denied.

SO ORDERED.

**5.** Neither of the cases cited in support of Oppenheim's "comparative fault analysis" (*Cicorelli v. Capobianco* (2d Dept.1982) 89 A.D.2d 842, 453 N.Y.S.2d 21, *aff'd*, 59 N.Y.2d 626, 463 N.Y.S.2d 195, 449 N.E.2d 1273 (1983) or *Bernstein v. Oppenheim* (1st Dept.1990) 160 A.D.2d 428, 554 N.Y.S.2d 487) has even arguable relevance to his position. *See* Plaintiffs Brief at 17–18.