PAVELIC & LeFLORE *v.* MARVEL ENTERTAINMENT
GROUP, A DIVISION OF CADENCE
INDUSTRIES CORP., ET AL.

No. 88–791.   Argued October 2, 1989—Decided December 5, 1989

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, BLACKMUN, STEVENS, O'CONNOR, and KENNEDY, JJ., joined.   MARSHALL, J., filed a dissenting opinion, *post,* p. 127.

*Jacob Laufer* argued the cause for petitioner.   With him on the briefs was *Patricia M. Karish.*

*Norman B. Arnoff* argued the cause for respondents and filed a brief for respondent Shukat.   *Robert B. McKay* and *Sol V. Slotnik* filed a brief for respondents Marvel Entertainment Group et al.

JUSTICE SCALIA delivered the opinion of the Court.

Federal Rule of Civil Procedure 11 provides in part: "If a pleading, motion, or other paper is signed in violation of this rule, the court . . . shall impose upon the person who signed it . . . an appropriate sanction . . . ." In this case we must determine whether Rule 11 authorizes a court to impose a sanction not only against the individual attorney who signed, but also against that attorney's law firm.

## I

The action giving rise to the current controversy was instituted by plaintiff Northern J. Calloway against respondents for willful copyright infringement of his motion picture script and other related claims. The original complaint—signed and filed by Calloway's attorney, Ray L. LeFlore—alleged that Calloway had developed an idea for a motion picture and written a script, and that respondents had begun to develop this work without his permission. Respondents filed a motion to dismiss, pointing to a series of documents annexed to the complaint that gave them the right to develop the work commercially. The District Court dismissed the complaint (with leave to refile), not on the ground that the documents authorized the alleged infringement, but because Calloway's complaint had failed to specify the registration number of his copyright and the dates upon which the alleged acts of infringement had occurred.

An amended complaint, again signed by LeFlore, was filed several weeks later. In addition to remedying the defects that were the basis of dismissal, it newly asserted that Calloway's signatures on the documents purporting to grant an option had been forged by respondents, and included that among the actions for which damages were sought. Plaintiff relied on this forgery claim in opposing respondents' motions to dismiss and motions for summary judgment.

In October 1984, LeFlore joined with Radovan Pavelic to form the law partnership of Pavelic & LeFlore. Thereafter, all court papers in the case were signed:

"Pavelic & LeFlore
By /s/ Ray L. LeFlore
(A Member of the Firm)
Attorneys for Plaintiff."

Several of these papers, including interrogatory responses and a proposed pretrial order, continued to rely upon the allegation of forgery. At trial, the District Court found insufficient evidence to support that contention, and directed a verdict in favor of respondents on that issue. The jury returned a verdict against plaintiff on all remaining claims.

Upon respondents' motion and after a hearing, the District Court imposed a Rule 11 sanction in the amount of $100,000 against Pavelic & LeFlore on the ground that the forgery claim had no basis in fact and had not been investigated sufficiently by counsel. Radovan Pavelic moved to relieve the firm of the sanction, contending that (1) the firm did not exist during a major portion of the litigation and therefore was not fully responsible for the Rule 11 violations, and (2) Rule 11 empowers the court to impose a sanction only upon the attorney who signed the paper, not upon that attorney's law firm. The District Court accepted the first contention, and therefore amended its order to shift half of the sanction from the firm to LeFlore. It rejected the second contention, however, concluding that Rule 11 sanctions may be imposed "on both the individual attorney and the law firm on whose behalf he signed the papers." *Calloway* v. *Marvel Entertainment Group, Div. of Cadence Industries Corp.*, 650 F. Supp. 684, 687 (SDNY 1986).

The Court of Appeals for the Second Circuit affirmed, 854 F. 2d 1452, 1479 (1988), thus placing itself in square disagreement with an earlier holding of the Fifth Circuit that Rule 11 authorizes sanctions against no attorney other than the individual lawyer or lawyers who sign court papers, see *Robin-*

*son* v. *National Cash Register Co.*, 808 F. 2d 1119, 1128–1130 (1987). We granted certiorari, 489 U. S. 1009 (1989).

## II

We give the Federal Rules of Civil Procedure their plain meaning, *Walker* v. *Armco Steel Corp.*, 446 U. S. 740, 750, n. 9 (1980), and generally with them as with a statute, "[w]hen we find the terms . . . unambiguous, judicial inquiry is complete," *Rubin* v. *United States*, 449 U. S. 424, 430 (1981). The specific text of Rule 11 at issue here is the provision that requires a court, when a paper is signed in violation of the Rule, to "impose upon the person who signed it . . . an appropriate sanction." Thus viewed in isolation, the phrase "person who signed" is ambiguous as to the point before us today. That is not so, however, when it is read in the total context of all the provisions of Rule 11 dealing with the signing of filings. Those provisions (all of Rule 11 except two sentences) are as follows:

> "Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address . . . . The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the at-

tention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

In other contexts the phrase "the person who signed it" might bear the somewhat technical legal meaning of the natural or juridical person in whose name or on whose behalf the paper was signed; but in a paragraph beginning with a requirement of individual signature, and then proceeding to discuss the import and consequences of signature, we think references to the signer in the later portions must reasonably be thought to connote the individual signer mentioned at the outset. It is as strange to think that the phrase "person who signed" in the last sentence refers to the partnership represented by the signing attorney, as it would be to think that the earlier phrase "the signer has read the pleading" refers to a reading not necessarily by the individual signer but by someone in the partnership; or that the earlier phrase "[i]f a pleading . . . is not signed" refers not to an absence of individual signature but to an absence of signature on behalf of the partnership. Just as the requirement of signature is imposed upon the individual, we think the recited import and consequences of signature run *as to him.*

Respondents' interpretation is particularly hard to square with the text since they do not assert that "the person who signed," and who "shall" be sanctioned under the Rule, is *only* the partnership (that would obviously be unacceptable), but rather is *either* the partnership *or* the individual attorney, *or* both, at the court's option. But leaving that option unexpressed seems quite inconsistent with the extreme care with which the Rule, in the very same sentence, makes clear

that the mandatory sanction must extend to "the person who signed [the paper], a represented party, or both." It is surely puzzling why the text would be so precise about that but leave to speculation whether only the individual attorney or his firm or both can be sanctioned. The puzzlement does not exist, of course, if "the person who signed" means *only* the individual attorney.

Respondents appeal to "long and firmly established legal principles of partnership and agency," Brief for Respondents Marvel Entertainment Group et al. 29, under which all the members of a partnership are liable for the authorized acts of a partner or employee, see Restatement (Second) of Agency § 140 (1958). We are not dealing here, however, with common-law liability, but with a Rule that strikingly departs from normal common-law assumptions such as that of delegability. The signing attorney cannot leave it to some trusted subordinate, or to one of his partners, to satisfy himself that the filed paper is factually and legally responsible; by signing he represents not merely the fact that it is so, but also the fact that he personally has applied his own judgment. Where the text establishes a duty that cannot be delegated, one may reasonably expect it to authorize punishment only of the party upon whom the duty is placed. We think that to be the fair import of the language here.

Respondents also rely upon the fact that after formation of the partnership LeFlore's signature was explicitly *on behalf of* the firm. The simple response is that signature on behalf of the firm was not a signature that could comply with the first sentence of the Rule, and not a signature to which the later portions of the Rule attach consequences. Rule 11 says that papers must be signed "by at least one attorney of record *in the attorney's individual name.*" (Emphasis added.) Even if LeFlore's signature in the fashion indicated had the effect of making the firm and all its partners (including himself) attorneys of record, it is only his signature *in his individual name* that satisfies the first sentence of the Rule, and

it is that signature, in that individual capacity, to which the later portions of the Rule refer. It has long been thought the better practice for the attorney complying with Rule 11 not to sign *for* his firm, but to sign in his individual name and on his own behalf, with the name of his firm beneath. See Gavit, The New Federal Rules and State Procedure, 25 A. B. A. J. 367, 371 (1939) (Under Rule 11, "the practice for pleadings to be signed in the name of a partnership" is "undesirable" and "improper").

Respondents, and the opinion of the Court of Appeals, rely heavily upon the contention that the policies underlying Rule 11 will best be served by holding a law firm accountable for its attorney's violation. In the Court of Appeals' words, "[law firm] responsibility for Rule 11 sanctions will create strong incentives for internal monitoring, and greater monitoring will result in improved pre-filing inquiries and fewer baseless claims." 854 F. 2d, at 1480. Even if it were entirely certain that liability on the part of the firm would more effectively achieve the purposes of the Rule, we would not feel free to pursue that objective at the expense of a textual interpretation as unnatural as we have described. Our task is to apply the text, not to improve upon it.

But in any event it is not at all clear that respondents' strained interpretation would better achieve the purposes of the Rule. It would, to be sure, better guarantee reimbursement of the innocent party for expenses caused by the Rule 11 violation, since the partnership will normally have more funds than the individual signing attorney. The purpose of the provision in question, however, is not reimbursement but "sanction"; and the purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility. It is at least arguable that *these* purposes are better served by a provision which makes clear that, just as the court expects the signer personally—and not some nameless person within his law firm—to validate the truth and legal reasonableness of the papers filed, so also it will visit

upon him personally—and not his law firm—its retribution for failing in that responsibility. The message thereby conveyed to the attorney, that this is not a "team effort" but in the last analysis *yours alone*, is precisely the point of Rule 11. Moreover, psychological effect aside, there will be greater economic deterrence upon the signing attorney, who will know for certain that the district court will impose its sanction entirely upon him, and not divert part of it to a partnership of which he may not (if he is only an associate) be a member, or which (if he is a member) may not choose to seek recompense from him. To be sure, the partnership's knowledge that it was subject to sanction might induce it to increase "internal monitoring," but one can reasonably believe that more will be achieved by directly increasing the incentive for the individual signer to take care. Such a belief is at least not so unthinkable as to compel the conclusion that the Rule does not mean what it most naturally seems to say.

For the foregoing reasons, the judgment of the Second Circuit is reversed insofar as it allows Rule 11 sanctions to be imposed against Pavelic & LeFlore. The case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE MARSHALL, dissenting.

We have consistently held that a trial judge bears the primary responsibility for managing the cases before him. One of the fundamental purposes of Rule 11 is to strengthen the hand of the trial judge in his efforts to police abusive litigation practices and to provide him sufficient flexibility to craft penalties appropriate to each case. The Court's interpretation of Rule 11, in contrast, is overly restrictive, as it reads into the Rule an absolute immunity for law firms from any sanction for their misconduct.

Although the Court recognizes that the relevant phrase in Rule 11—"the person who signed" the pleading, motion, or paper at issue—could mean a *juridical* person on whose be-

half the document is signed, *ante*, at 124, it nonetheless finds that the phrase has a more limited meaning in the context of the Rule as a whole. As I cannot acquiesce in such an unnecessary erosion of the discretion of federal trial judges, I dissent.

The Court's reading of the "plain meaning" of Rule 11 is based entirely on the connection it perceives between the language at the beginning of the Rule, which refers to an individual "'signer,'" and the crucial language in the last sentence, which allows a court to impose sanctions on "'the person who signed'" a pleading or paper. *Ante*, at 123–124. Although the text of the Rule does not foreclose the reading the Court finds compelling, that interpretation is by no means the only reasonable one—and certainly is not required by the "plain meaning." Significantly, in three separate places the Rule identifies the person signing a document as the "signer." Yet it uses an entirely different phrase, "the person who signed" the pleading, in its listing of parties who may be sanctioned for violations, thereby drawing an explicit distinction between the two phrases. If the drafters had intended to limit the entity that could be sanctioned under the Rule to the individual signer, they easily could have repeated the word "signer" a fourth time. The use of different phrases may reasonably be viewed as an indication of two different meanings. In the case of "signer," the drafters unambiguously sought to refer to the individual who actually signed the document; in their subsequent use of the phrase "the person who signed," the drafters may have signaled their intent to allow a court to impose sanctions on any juridical person, including the law firm of the individual signer. In the context of the Federal Rules of Civil Procedure, drafted by a committee familiar with traditional legal concepts, one can reasonably assume that the word "person" indicates more than just natural persons, encompassing partnerships and professional corporations as well. See, *e. g.*, 5 U. S. C. § 551(2) (Administrative Procedure Act defines

"person" as an "individual, partnership, corporation, association, or public or private organization other than an agency"); N. Y. Partnership Law § 2 (McKinney 1988) (defining "person" to include "individuals, partnerships, corporations, and other associations"). At the least, an interpretation of Rule 11 that gives "person" its legal meaning is no less plausible than the majority's more restrictive reading of the Rule.

The purposes of the Rule support this construction of Rule 11. All pleadings, motions, and papers must be signed by an attorney in his *individual* name. This requirement serves in part the administrative goal of identifying for the court one person who can answer questions about the papers. Because Rule 11 proceedings often occur at the end of litigation, see Advisory Committee's Notes on Fed. Rule Civ. Proc. 11, 28 U. S. C. App., p. 129 (1982 ed., Supp. V), it will often be crucial that the relevant documents, which may have been filed months or even years earlier, identify a specific individual with knowledge of their contents. No such administrative concerns suggest that the phrase "the person who signed" the paper should be restricted to an individual.

Furthermore, as the majority emphasizes, *ante*, at 126, the requirement of an individual signer promotes a measure of individual accountability by ensuring that someone takes direct responsibility for each filing. Yet encouraging individual accountability and firm accountability are not mutually exclusive goals. Indeed, individual accountability may be heightened when an attorney understands that his carelessness or maliciousness may subject *both* himself and his firm to liability. The concern that a person take direct responsibility for each paper is not disserved by holding the law firm responsible in cases where the district court determines that both are blameworthy. In short, it is not internally inconsistent, nor does it inevitably lead to "puzzling" results, *ante*, at 125, to allow a trial judge the discretion to impose sanctions on a law firm, a juridical person, for which a signing attorney acts as agent.

The policies underlying Rule 11 decisively indicate that "person" should be interpreted broadly so that a court can effectively exercise discretion in formulating appropriate sanctions. Although, as the majority infers from the Rule's text, one purpose of Rule 11 may be "to bring home" to the individual signer his personal responsibility for complying with its dictates, *ante,* at 126, the Rule is *explicitly* designed to deter improper pleadings, motions, and papers. Advisory Committee's Notes on Fed. Rule Civ. Proc. 11, 28 U. S. C. App., p. 129 (1982 ed., Supp. V) ("The word 'sanctions' in the caption . . . stresses a deterrent orientation in dealing with improper pleadings"). Admittedly, in some cases, sanctions imposed solely on the individual signer may halt abusive practices most effectively. In other cases, however, deterrence might best be served by imposing sanctions on the signer's law firm in an attempt to encourage internal monitoring. The trial judge is in the best position to assess the dynamics of each situation and to act accordingly.

Recognizing the need to tailor the sanction to each particular situation, the Advisory Committee emphasized in a related context the need for "flexibility" in dealing with violations. See *ibid.* (discussing the effect of the words "shall impose" on the trial court's discretion to impose sanctions). Flexibility is no less important when a judge decides whether one, some, or all of the many entities before him should be held responsible for improper pleadings, motions, or papers. Where, as here, the Rule itself does not demand rigidity, it is unwise for the Court to constrict the options available to a trial judge faced with a violation of Rule 11. The judge who observes improper behavior and who is intimately familiar with the facts of a case should be allowed to fashion the penalty that most effectively deters future abuse. Today's decision unwisely ties the hands of trial judges who must deal frequently and immediately with Rule 11 violations and ill serves the goal of administering that Rule justly and efficiently. See Fed. Rule Civ. Proc. 1.

The District Court apportioned the sanction here between the signing attorney and his law firm, based on its assessment of the relative culpability of each. *Calloway* v. *Marvel Entertainment Group, Div. of Cadence Industries Corp.*, 650 F. Supp. 684 (SDNY 1986). I firmly believe that this sort of penalty is precisely what Rule 11 contemplates. I therefore cannot join the Court's reading of the Rule which creates an immunity for law firms from its coverage.