**In re SIR JOHN, INC., Debtor.**

**Bankruptcy No. 91–20203–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

June 24, 1992.

Ira C. Hatch, Fort Lauderdale, Fla., for movant.

Kevin C. Gleason, Boca Raton, Fla., for respondent.

## ORDER GRANTING MOTION TO IMPOSE SANCTIONS

*(Rule 9011 of the Federal Rules of Bankruptcy Procedure)*

RICHARD L. BOHANON, Bankruptcy Judge.

■ One of the creditors in this bankruptcy case, Homestead Federal Savings Bank, has moved to impose sanctions pursuant to Bankruptcy Rule 9011. The motion is directed at Michael Kotler, an attorney who signed and filed debtor's bankruptcy petition, his law firm, Schwartz, Gold, Cohen & Zakarin, P.A. and his client, Richard Privitera.[1] This decision addresses only the issues as they relate to Michael Kotler.

The facts, as developed at an evidentiary hearing, are relatively uncomplicated. Kotler is a member of the Florida Bar having graduated from law school in 1988. He is approximately 28 years of age.

He was contacted by Privitera whom he knew slightly. Privitera indicated that he had an interest in purchasing a night club in Fort Lauderdale and wished to employ Kotler to represent him in connection with this transaction.

The club was owned and operated by the debtor, Sir John, Inc. and all of its stock is owned by John M. Cunningham whose lawyer was Robert Cobb. Homestead had a validly perfected security interest in debtor's interest in the club. The principal amount of its debt is approximately $135,-000.

Prior to employing Kotler, Privitera met with Cunningham and Cobb and negotiated a contract to purchase all the stock of Sir John. This contract was initially executed by Peter Privitera, Richard's brother on behalf of a corporation to be formed named Elaine, Inc. A subsequent meeting was scheduled for the closing. At this meeting Richard Privitera appeared but for numerous reasons relating primarily to his failure to perform conditions precedent the transaction did not close. At this meeting Privatera stated that he wished to contact an attorney before proceeding further and he employed Kotler.

The parties' intent was to form a corporation which would be owned by Privitera to purchase all of Cunningham's stock in Sir John. The name Elaine, Inc. was unavailable so the corporation was called Mrs. Elaine, Inc.

At the second meeting some documents were executed. One of them was Cunningham's resignation as an officer and director of Sir John. Even though the transaction did not close Cunningham allowed Privitera to operate the club and he remained on site as a consultant.

Privitera commenced operation of the club and collected the revenues but paid few of the bills. During this interim Kotler and Cobb continued to negotiate and correspond concerning the final form of the transaction.

From all appearances Privitera was in charge of the club and Kotler saw him on the premises in this capacity. The transaction, however, did not close and Privitera never received the stock certificates which remained in Cobb's possession.

The financial condition of the club operation continued to deteriorate, the landlord

---

1. Sanctions against a law firm do not lie and accordingly the motion as to the firm is denied. *See Pavelic & LeFlore v. Marvel Ent. Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). Richard Privitera has not responded to the motion.

served a statutory notice of eviction for failure to pay rent and the liquor license would terminate if the lease was canceled.

Privitera explained these circumstances to Kotler who had a copy of Cunningham's resignation as an officer and director of Sir John. Based upon the resignation and Privitera's statements and activities in connection with the club Kotler hastily prepared the bankruptcy petition seeking to file it before the lease terminated. He states that it was his intent to file the petition before termination in order to provide for assumption of the lease under section 365 of the Bankruptcy Code. He also stated that it was his belief that the transaction was final but that Cobb was merely holding the stock until the last installment payment had been made. However, shortly before the petition was filed Kotler had written Cobb requesting changes in the arrangements stating that "we must resolve this matter and have the documents executed in final form, so that we may conclude this matter." He thus obviously knew that the transaction was not final.

Approximately three months after it was filed Homestead moved to dismiss the case for lack of authority. Subsequently, this motion was granted and the petition was dismissed because neither Privitera nor Kotler were authorized to file the petition in the first instance.

At some time prior to the dismissal the club facilities were virtually destroyed by persons unknown and Homestead's collateral was rendered almost valueless.

Homestead now seeks to impose sanctions upon Kotler contending that he failed to make a reasonable inquiry as required by Rule 9011. Homestead further contends that the amount of sanctions ought to be its principal, interest, fees and costs in connection with the case which, with some credits for amounts collected on a guarantee, total in excess of $150,000.

■ It first is necessary to weigh Kotler's actions in filing the petition against the mandates of Rule 9011. It requires that, in order to sanction him, I find that he failed to make a "reasonable inquiry" to determine that the petition was "well grounded in fact" before he signed and filed it.[2]

■ If, therefore, Kotler failed to make the reasonable inquiry he must be sanctioned in an appropriate manner pursuant to Rule 9011. It can only be said that he did not make a reasonable inquiry. As evidenced by his own letter shortly before the petition was filed he knew that the transaction had not closed and his client did not have the stock of the corporation—even though Cunningham had executed the letter of resignation. There is no basis for saying that Kotler thought that Cobb was merely holding the stock until receipt of the final payment. Further, if there was any question in his mind the reasonable thing to do was to inquire of Cobb concerning who had the *de jure* authority to speak for the corporation. It can only be said that he filed the petition in a moment of youthful exuberance without stopping to think. Since he did not inquire reasonably sanctions must be imposed. The issue then becomes what is an "appropriate sanction" under these circumstances?

There are two general theories of what sanction is appropriate. Some adopt a cost-shifting approach and other a penal or deterrent approach. The views are discussed in Nelken, *Sanctions Under Amended Federal Rule 11—Some "Chilling" Problems in the Struggle Between Compensation and Punishment,* 74 The Georgetown Law Journal 1313. In concluding this article says:

> The cost-shifting view espoused by Professor Miller emphasizes the economic realities of litigation and seeks to have costs fall on the party whose wasteful or abusive conduct caused expense to the other side. This view likens sanctions to the English practice of awarding attorney's fees to the prevailing party. The

---

**2.** The only consideration here is whether Kolter made a reasonable inquiry since I specifically find that he did not possess any improper purpose such as harassment, delay or to unnecessarily increase the cost of the matter. The record is totally void of any evidence which would support a finding of fact of this nature.

analogy is not really apt, since rule 11 sanctions are not automatically available to a prevailing party yet it comes closest in spirit to the goal implicit in a sanctioning standard aimed at frivolous filings. By contrast, Judge Schwarzer views the purpose of rule 11 as primarily punitive. He focuses on the nature of conduct giving rise to sanctions—a secondary factor in Professor Miller's economic analysis. Judge Schwarzer believes that the imposition of sanctions is a duty that judges must discharge to encourage lawyers to take their ethical responsibilities seriously. He has not only imposed costs and fees upon lawyers who have violated the rule, but has published and ordered wide dissemination of his often highly critical opinions, a sanction that may have far more serious consequences for the offending lawyers than an order to pay fees.

*Id.* at p. 1352

A leading case on the subject within this circuit is *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir.1991). There the "complaint had no reasonable factual basis when pled and [respondents] knew this. When they decided to pursue this action despite their knowledge that it was frivolous, they acted in bad faith." *Pelletier* at p. 1515. The Court continued to say that "[i]t is apparent to us that [respondent] brought this suit purely to harass [movant] and, in the process, to extract a settlement from him." It goes on to say that sanctions should "serve the dual purpose of deterring the filing of frivolous claims and defenses while not chilling attorneys' legitimate enthusiasm and creativity in advancing legal and factual theories ... [lawyers] must *stop and think* before filing [their papers.]" *Pelletier* at p. 1522.

█ It thus is plain that in the Eleventh Circuit the standard trial courts are to apply in assessing sanctions may be based on deterrence as opposed to a fee-shifting or compensatory measure as applied in some other circuits.

The court of appeals for this circuit also holds that the court imposing the sanctions has wide discretion to tailor the sanction to the circumstances at hand in the particular case. *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1209–10 (11th Cir. 1985); *Donaldson v. Clark*, 819 F.2d 1551, 1556–57 (11th Cir.1987). The Court has stated that whether sanctions are viewed as a form of cost-shifting or punishment, they are imposed for the purpose of deterring attorneys from violating Rule 11. *Donaldson*, 819 F.2d at 1556.

In furtherance of this policy, the Court of Appeals has held that various types of sanctions are within the courts' discretion, including, but not limited to monetary sanctions, public reprimands, suspension or disbarment. *Kleiner*, 751 F.2d at 1209; *Donaldson v. Clark*, 786 F.2d 1570 (11th Cir. 1986) vacated at 794 F.2d 572 (11th Cir. 1986) and reheard at 819 F.2d 1551 (11th Cir.1987).

Several other jurisdictions have also held that the discretion of the court extends to imposition of penalties payable to the court. *Whittington v. Lynaugh*, 842 F.2d 818 (5th Cir.1988); *Frantz v. U.S. Powerlifting Fed'n.*, 836 F.2d 1063 (7th Cir.1987).

█ In the exercise of this discretion I elect, in this case, to use the deterrence standard in fashioning the appropriate sanction. The task at hand, therefore, is to fashion a sanction which will deter Kotler from failing to make the required reasonable inquiry in the future.

Therefore, Homestead's motion is granted and it is ordered that Kotler pay $500 to the Clerk of the Court; that this decision be published; that copies of it be distributed to all the bankruptcy judges in this district; and that the clerk maintain a copy of it in such fashion as will permit it to be located and considered should sanctions be sought against Kotler in the future in some other case. I find specifically that this sanction is appropriate in the circumstances in that it will serve to deter Kotler from failing to inquire reasonably in the future.