I concur with the majority opinion both as to Issue I and Issue II, but in regard to Issue II, I write specially to point out that Rule 11 of the Federal Rules of Civil Procedure is presently under considerable discussion and revision. Inasmuch as our treatment of the Litigation Accountability Act is patterned after Rule 11, it is worthwhile to discuss ways in which Rule 11 will be changed, and the notes of the Advisory Committee on Civil Rules of the United States Judicial Conference as to how federal district courts should implement these changes.[9]
The principal purpose of Rule 11, which is to discourage frivolous lawsuits, is being retained. However, the means by which that purpose is attained is not being retained.
It is significant that prior to 1983, when Rule 11 was amended, only a few Rule 11 decisions had been reported, but that after the amendment and the appointment of Republican judges by Presidents Reagan and Bush, over 600 Rule 11 decisions have been reported. See, Georgene M. Vairo, Rule 11:A Critical Analysis, 118 F.R.D. 189 (1988), and Eric K. Yamamoto and Danielle K. Hart, Rule 11 and State Courts:Panacea or Pandora's Box?, 41 Def.L.J. 185 (1992).
The rule has been criticized as having a chilling effect on public interest attorneys filing novel and innovative lawsuits in the interest of the public. Such lawyers and law firms are hesitant to file such lawsuits when faced with the possibility of large monetary sanctions. Usually, such law firms are assisted by national organizations, such as the NAACP, the Sierra Club, and Legal Aid Services, whose resources are obtained from public and foundation support.
The committee comments discuss at great length the need for flexibility in the imposition not only of monetary sanctions, but sanctions of any description. For the benefit of the bench and bar, I am including in this concurring opinion the committee's recommendation for the change of Rule 11, as well as its comments, which are due to go before the United States Supreme Court and the United States Congress this year for approval and adoption *Page 420 
as the law on an attorney's responsibility with reference to motions, pleadings, and conduct of litigation in the federal system.
Inasmuch as the majority opinion is based on Rule 11, the federal counterpart of our Litigation Accountability Act, it will be good for us to take into consideration how the federal system will probably handle Rule 11 in the future. Even if the United States Supreme Court and Congress do not adopt all these changes, I think that these changes are good and should be considered by our courts in implementing our Litigation Accountability Act, which, to some extent, parallels Rule 11.
The proposed new Rule 11, with comments, is as follows:
 "Rule 11. Signing of Pleadings, Motions, and Other Papers; Representations to Court: Sanctions
 "(a) Signature. Every pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper, that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law, or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other An unsigned paper is not signed, it shall be stricken unless it is signed promptly after the omission of the signature
is corrected promptly after being called to the attention of the pleader or movant attorney or party.
 "(b) Representations to Court. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —
 "(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
 "(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
 "(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
 "(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief. *Page 421 
 "(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
"(1) How Initiated.
 "(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.
 "(B) On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.
 "(2) Nature of Sanction: Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.
 "(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).
 "(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.
 "(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.
 "(d) Inapplicability to Discovery. Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37.
"COMMITTEE NOTES
 "Purpose of revision. This revision is intended to remedy problems that have arisen in the interpretation and application of the 1983 revision of the rule. For empirical examination of experience under the 1983 rule, see, e.g., New York State Bar Committee on Federal Courts, Sanctions and Attorneys' Fees (1987); T. Willging, The Rule 11 Sanctioning Process (1989); American Judicature Society, Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11
(S. Burbank ed., 1989); E. Wiggins, T. Willging, and D. Stienstra, Report on Rule 11 (Federal Judicial Center 1991). For book-length analyses of the case law, see G. Joseph, Sanctions: The Federal Law of Litigation Abuse (1989); J. Solovy, The Federal Law of Sanctions (1991); G. Vairo, Rule 11 Sanctions: Case Law Perspectives and Preventive Measures (1991).
 "The rule retains the principle that attorneys and pro se litigants have an obligation to the court to refrain from conduct that frustrates the aims of Rule 1. The revision broadens the scope of this *Page 422 
obligation, but places greater constraints on the imposition of sanctions and should reduce the number of motions for sanctions presented to the court. New subdivision (d) removes from the ambit of this rule all discovery requests, responses, objections, and motions subject to the provisions of Rule 26 through 37.
 "Subdivision (a). Retained in this subdivision are the provisions requiring signatures on pleadings, written motions, and other papers. Unsigned papers are to be received by the Clerk, but then are to be stricken if the omission of the signature is not corrected promptly after being called to the attention of the attorney or pro se litigant. Correction can be made by signing the paper on file or by submitting a duplicate that contains the signature. A court may require by local rule that papers contain additional identifying information regarding the parties or attorneys, such as telephone numbers to facilitate facsimile transmissions, though, as for omission of a signature, the paper should not be rejected for failure to provide such information.
 "The sentence in the former rule relating to the effect of answers under oath is no longer needed and has been eliminated. The provision in the former rule that signing a paper constitutes a certificate that it has been read by the signer also has been eliminated as unnecessary. The obligations imposed under subdivision (b) obviously require that a pleading, written motion, or other paper be read before it is filed or submitted to the court.
 "Subdivisions (b) and (c). These subdivisions restate the provisions requiring attorneys and pro se litigants to conduct a reasonable inquiry into the law and facts before signing pleadings, written motions, and other documents, and prescribing sanctions for violation of these obligations. The revision in part expands the responsibilities of litigants to the court, while providing greater constraints and flexibility in dealing with infractions of the rule. The rule continues to require litigants to 'stop-and-think' before initially making legal or factual contentions. It also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention.
 "The rule applies only to assertions contained in papers filed with or submitted to the court. It does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not have been made if there had been more time for study and reflection. However, a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit. For example, an attorney who during a pretrial conference insists on a claim or defense should be viewed as 'presenting to the court' that contention and would be subject to the obligations of subdivision (b) measured as of that time. Similarly, if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court (whether as claims, defenses, or in disputes regarding removal or remand), it would be viewed as 'presenting' — and hence certifying to the district court under Rule 11 — those allegations.
 "The certification with respect to allegations and other factual contentions is revised in recognition that sometimes a litigant may have good reasons to believe that a fact is true or false but may need discovery, formal or informal, from opposing parties or third persons to gather and confirm the evidentiary basis for the allegation. Tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation *Page 423 
to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties, make claims, or present defenses without any factual basis or justification. Moreover, if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention. Subdivision (b) does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses.
 "The certification is that there is (or likely will be) 'evidentiary support' for the allegation, not that the party will prevail with respect to its contention regarding the fact. That summary judgment is rendered against a party does not necessarily mean, for purposes of this certification, that it had no evidentiary support for its position. On the other hand, if a party has evidence with respect to a contention that would suffice to defeat a motion for summary judgment based thereon, it would have sufficient 'evidentiary support' for purposes of Rule 11.
 "Denials of factual contentions involve somewhat different considerations. Often, of course, a denial is premised upon the existence of evidence contradicting the alleged fact. At other times a denial is permissible because, after an appropriate investigation, a party has no information concerning the matter or, indeed, has a reasonable basis for doubting the credibility of the only evidence relevant to the matter. A party should not deny an allegation it knows to be true; but it is not required, simply because it lacks contradictory evidence, to admit an allegation that it believes is not true.
 "The changes in subdivisions (b)(3) and (b)(4) will serve to equalize the burden of the rule upon plaintiffs and defendants, who under Rule 8(b) are in effect allowed to deny allegations by stating that from their initial investigation they lack sufficient information to form a belief as to the truth of the allegation. If, after further investigation or discovery, a denial is no longer warranted, the defendant should not continue to insist on that denial. While sometimes helpful, formal amendment of the pleadings to withdraw an allegation or denial is not required by subdivision (b).
 "Arguments for extensions, modifications, or reversals of existing law or for creation of new law do not violate subdivision (b)(2) provided they are 'nonfrivolous.' This establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments. However, the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated. Although arguments for a change of law are not required to be specifically so identified, a contention that is so identified should be viewed with greater tolerance under the rule.
 "The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities (or, in the case of government attorneys, to the Attorney General, Inspector General, or agency head), etc. See Manual for Complex Litigation, Second, § 42.3. The rule does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in the circumstances; but, for emphasis, it does specifically note that a sanction may be nonmonetary as well as monetary. Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person *Page 424 
has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations. The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.
 "Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty. However, under unusual circumstances, particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation. Accordingly, the rule authorizes the court, if requested in a motion and if so warranted, to award attorney's fees to another party. Any such award to another party, however, should not exceed the expenses and attorneys' fees for the services directly and unavoidably caused by the violation of the certification requirement. If, for example, a wholly unsupportable count were included in a multi-count complaint or counterclaim for the purpose of needlessly increasing the cost of litigation to an impecunious adversary, any award of expenses should be limited to those directly caused by inclusion of the improper count, and not those resulting from the filing of the complaint or answer itself. The award should not provide compensation for services that could have been avoided by an earlier disclosure of evidence or an earlier challenge to the groundless claims or defenses. Moreover, partial reimbursement of fees may constitute a sufficient deterrent with respect to violations by persons having modest financial resources. In cases brought under statutes providing for fees to be awarded to prevailing parties, the court should not employ cost-shifting under this rule in a manner that would be inconsistent with the standards that govern the statutory award of fees, such as stated in Christiansburg Garment Co. v. EEOC, 434 U.S. 412
[98 S.Ct. 694, 54 L.Ed.2d 648] (1978).
 "The sanction should be imposed on the persons — whether attorneys, law firms, or parties — who have violated the rule or who may be determined to be responsible for the violation. The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most situations is the person to be sanctioned for a violation. Absent exceptional circumstances, a law firm is to be held also responsible when, as a result of a motion under subdivision (c)(1)(A), one of its partners, associates, or employees is determined to have violated the rule. Since such a motion may be filed only if the offending paper is not withdrawn or corrected within 21 days after service of the motion, it is appropriate that the law firm ordinarily be viewed as jointly responsible under established principles of agency. This provision is designed to remove the restrictions of the former rule. Cf. Pavelic LeFlore v. Marvel Entertainment Group, 493 U.S. 120 [110 S.Ct. 456, 107 L.Ed.2d 438] (1989) (1983 version of Rule 11 does not permit sanctions against law firm of attorney signing groundless complaint).
 "The revision permits the court to consider whether other attorneys in the firm, co-counsel, other law firms, or the party itself should be held accountable for their part in causing a violation. When appropriate, the court can make an additional inquiry in order to determine whether the sanction should be imposed on such persons, firms, or parties either *Page 425 
in addition to or, in unusual circumstances, instead of the person actually making the presentation to the court. For example, such an inquiry may be appropriate in cases involving governmental agencies or other institutional parties that frequently impose substantial restrictions on the discretion of individual attorneys employed by it.
 "Sanctions that involve monetary awards (such as a fine or an award of attorney's fees) may not be imposed on a represented party for causing a violation of subdivision (b)(2), involving frivolous contentions of law. Monetary responsibility for such violations is more properly placed solely on the party's attorneys. With this limitation, the rule should not be subject to attack under the Rules Enabling Act. See Willy v. Coastal Corp., [___] U.S. [___, 112 S.Ct. 1076, 117 L.Ed.2d 280] (1992); Business Guides, Inc. v. Chromatic Communications Enter. Inc., [498] U.S. [533, 111 S.Ct. 922, 112 L.Ed.2d 1140] (1991). This restriction does not limit the court's power to impose sanctions or remedial orders that may have collateral financial consequences upon a party, such as dismissal of a claim, preclusion of a defense, or preparation of amended pleadings.
 "Explicit provision is made for litigants to be provided notice of the alleged violation and an opportunity to respond before sanctions are imposed. Whether the matter should be decided solely on the basis of written submissions or should be scheduled for oral argument (or, indeed, for evidentiary presentation) will depend on the circumstances. If the court imposes a sanction, it must, unless waived, indicate its reasons in a written order or on the record; the court should not ordinarily have to explain its denial of a motion for sanctions. Whether a violation has occurred and what sanctions, if any, to impose for a violation are matters committed to the discretion of the trial court; accordingly, as under current law, the standard for appellate review of these decisions will be for abuse of discretion. See Cooter Gell v. Hartmarx Corp., 496 U.S. 384 [110 S.Ct. 2447, 110 L.Ed.2d 359] (1990) (noting, however, that an abuse would be established if the court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence).
 "The revision leaves for resolution on a case-by-case basis, considering the particular circumstances involved, the question as to when a motion for violation of Rule 11 should be served and when, if filed, it should be decided. Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely. In other circumstances, it should not be served until the other party has had a reasonable opportunity for discovery. Given the 'safe harbor' provisions discussed below, a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).
 "Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b). They should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine. As under the prior rule, the court may defer its ruling (or its decision as to the identity of the persons to be sanctioned) until final resolution of the case in order to avoid immediate conflicts of interest and to reduce the disruption created if a disclosure of attorney-client communications is needed to determine whether a violation occurred or to identify the person responsible for the violation. *Page 426 
 "The rule provides that requests for sanctions must be made as a separate motion, i.e., not simply included as an additional prayer for relief contained in another motion. The motion for sanctions is not, however, to be filed until at least 21 days (or such other period as the court may set) after being served. If, during this period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court. These provisions are intended to provide a type of 'safe harbor' against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.
 "To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the 'safe harbor' period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.
 "As under former Rule 11, the filing of a motion for sanctions is itself subject to the requirement of the rule and can lead to sanctions. However, service of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11 — whether the movant or the target of the motion — reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion.
 "The power of the court to act on its own initiative is retained, but with the condition that this be done through a show cause order. This procedure provides the person with notice and an opportunity to respond. The revision provides that a monetary sanction imposed after a court-initiated show cause order be limited to a penalty payable to the court and that it be imposed only if the show cause order is issued before any voluntary dismissal or an agreement of the parties to settle the claims made by or against the litigant. Parties settling a case should not be subsequently faced with an unexpected order from the court leading to monetary sanctions that might have affected their willingness to settle or voluntarily dismiss a case. Since show cause orders will ordinarily be issued only in situations that are akin to a contempt of court, the rule does not provide a 'safe harbor' to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative. Such corrective action, however, should be taken into account in deciding what — if any — sanction to impose if, after consideration of the litigant's response, the court concludes that a violation has occurred.
 "Subdivision (d). Rules 26(g) and 37 establish certification standards and sanctions that apply to discovery disclosures, requests, responses, objections, and motions. It is appropriate that Rules 26 through 37, which are specially designed for the discovery process, govern such documents and conduct rather than the more general provisions of Rule 11. Subdivision (d) has been added to accomplish this result.
 "Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions. It does not supplant statutes permitting awards of attorney's fees to prevailing parties or alter the principles governing such awards. It does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under 28 U.S.C. § 1927. See *Page 427 Chambers v. NASCO, [___] U.S. [___, 111 S.Ct. 2123, 115 L.Ed.2d 27] (1991). Chambers cautions, however, against reliance upon inherent powers if appropriate sanctions can be imposed under provisions such as Rule 11, and the procedures specified in Rule 11 — notice, opportunity to respond, and findings — should ordinarily be employed when imposing a sanction under the court's inherent powers. Finally, it should be noted that Rule 11 does not preclude a party from initiating an independent action for malicious prosecution or abuse of process."
HORNSBY, C.J., and SHORES, HOUSTON and INGRAM, JJ., concur.
[9] This committee is chaired by the Honorable Sam C. Pointer, presiding judge of the United States District Court for the Northern District of Alabama. Public hearings have been held throughout the country on these changes over the past two years, and these changes are due to go before the United States Supreme Court for its actions prior to their transmission to Congress.