19-3443-cv
*Goldman v. Barrett*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10ᵗʰ day of September, two thousand twenty.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> JOHN M. WALKER, JR.,
> DENNIS JACOBS,
> *Circuit Judges*.

_____

DR. ROBERT M. GOLDMAN,
DR. RONALD KLATZ,

> *Plaintiffs-Appellants*,

> v.                                              19-3443-cv

DR. STEPHEN J. BARRETT,

> *Defendant-Appellee*,

QUACKWATCH, INC.

> *Defendant*.

_____

For Plaintiffs-Appellants:           SUSAN B. EGAN, Egan Law Firm LLC, New York, N.Y.

For Defendant-Appellee:           CHARLES A. MICHAEL, Steptoe & Johnson LLP, New York, N.Y.

Appeal from a judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Robert M. Goldman ("Goldman") and Ronald Klatz ("Klatz") appeal from a September 20, 2019 order imposing sanctions on their counsel, Wesley Paul ("Paul"). Goldman and Klatz are the co-founders of the American Academy of Anti-Aging Medicine. They sued Stephen Barrett ("Barrett") over an allegedly defamatory article he posted on the website Quackwatch noting the outcome of a disciplinary proceeding the Illinois Department of Professional Regulation had initiated against them. After the district court dismissed their original complaint, Goldman and Katz filed an amended complaint newly alleging that Barrett made defamatory statements to Chinese and Malaysian government officials, causing those officials to deny Goldman and Klatz approval to pursue business opportunities in those countries.[1] Barrett told Goldman and Klatz that these new allegations were false. To that end, he provided Goldman and Klatz with telephone records tending to show he had not made or received any calls with any numbers in China or Malaysia. When Goldman and Klatz declined to withdraw the new allegations, Barrett moved for sanctions under Fed. R. Civ. P. 11, arguing that the new allegations lacked factual support. The district court granted the motion and imposed a sanction of $10,000 on Paul. Goldman and Klatz appeal that order. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\*      \*      \*

---

[1] Barrett subsequently moved to dismiss the amended complaint. The district court granted his motion and this Court affirmed by summary order. *See Goldman v. Barrett*, 733 Fed. App'x 568 (2d Cir. 2018).

In their amended complaint, Goldman and Klatz described work they had undertaken to expand their anti-aging business into China ("the China Project") and Malaysia ("the Malaysia Project"). They alleged that Barrett sabotaged efforts to obtain government approvals by making false and defamatory statements about them to Chinese and Malaysian government officials. As to the China Project, Goldman and Klatz alleged that Barrett told Chinese officials that Goldman and Klatz "had violated numerous U.S. laws," "would likely be criminally prosecuted," "had tried to silence Dr. Barrett by using physical force and other intimidation tactics," and "were under further indictment by other countries for distributing drugs to foreign nations," among other things. Joint App'x at A69–A70. Goldman and Klatz alleged that as a result of these statements, Chinese authorities canceled the China Project. The amended complaint also alleged "it is likely Defendant Barrett had a similar conversation with Malaysian officials regarding the Malaysia Project which caused the consulting arrangement to be terminated." *Id.* at A71.

In litigating the sanctions motion, Goldman and Klatz revealed the basis for these allegations. Goldman submitted a declaration stating that a politically connected colleague in China, Stephanie Kuo ("Kuo"), had informed him and Klatz that "the likely reason for [the China Project's] rejection[] focused on concerns that resulted from the [Quackwatch] Article and communications that the government likely had with Dr. Barrett during diligence." *Id.* at A358. Goldman further stated that he believed "the Article and Dr. Barrett's influence also similarly caused the cessation" of the Malaysia Project. *Id.*

Paul also submitted a declaration in support of the opposition to the sanctions motion stating that he communicated with Kuo "at various points in late 2015 and 2016" using the app Weixin (also known as WeChat). *Id*. at A337. He stated that "Kuo informed [him] of the facts relating to the termination of various joint venture license[s] . . . which were generally described

3

in the Amended Complaint" and that he "had no substantial reason to doubt the statements made" by Kuo. *Id.* He believed that to corroborate Kuo's claims "the Case would need to proceed to the discovery stage and that information requests would need to comply with applicable international treaties (e.g. Hague Evidence Request)." *Id.*

This Court reviews a Rule 11 sanctions order for abuse of discretion. *Perez v. Posse Comitatus*, 373 F.3d 321, 326 (2d Cir. 2004). "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citations, alteration, and internal quotation marks omitted). Goldman and Klatz argue that the district court erred in finding that the amended complaint violated Rule 11 and also in imposing a sanction of $10,000. On both counts, we disagree.

Under Rule 11, an attorney has an obligation to file only papers that have a basis in fact. By signing a pleading, an attorney certifies that its "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). An attorney who files a paper that no competent attorney could believe, after reasonable inquiry, is well-grounded in fact violates Rule 11. *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002). As such, every attorney owes a duty to conduct a pre-litigation inquiry into the viability of a pleading that is objectively reasonable under the circumstances. *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990). Under the circumstances indicated by the record below, the district court did not abuse its discretion in finding that Paul failed to make a reasonable pre-filing inquiry into the bases for the China Project and Malaysia Project allegations.

4

First, Paul's reliance on Goldman and Kuo's insinuations about Barrett's conduct was unreasonable. Attorneys may, when reasonable, rely on what their clients tell them to support a claim. *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329–30 (2d Cir. 1995); *Calloway v. Marvel Ent. Grp.*, 854 F.2d 1452, 1470 (2d Cir. 1988), *rev'd on other grounds*, *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120 (1989). However, by necessary inference, an attorney may not base an allegation solely on a client's representation if it is objectively unreasonable to believe that the representation could support the allegation.

The district court did not abuse its discretion in concluding that Goldman and Kuo's statements did not reasonably support the specific allegations about what Barrett said to the Chinese officials. Goldman's statement that Kuo believed Barrett's interference was "likely" does not support the complaint's specific allegations of what Barrett said. As the district court noted, "speculation that conversations may have taken place . . . provides no support" for allegations as to the content of those conversations. Joint App'x at A387. And even though Paul declared that Kuo informed him of the "facts . . . generally described in the Amended Complaint," the district court did not abuse its discretion in concluding that Paul's failure to disclose or summarize the actual conversations between him and Kuo "strongly suggests that the factual allegations lack evidentiary support." *Id.* at A387–A388 (alterations, internal quotation marks, and citation omitted); *cf. Calloway*, 854 F.2d at 1471 (finding an attorney's failure to file an affidavit documenting his pre-filing inquiry suggestive that no such inquiry took place).

The district court's conclusion that the record failed to make out sufficient support for the Malaysia Project allegations follows *a fortiori*. In support of the allegation that it was "likely . . . Barrett had a similar conversation with Malaysian officials," Joint App'x at A71, is only Goldman's declaration, which states his belief that "the Article and Dr. Barrett's influence also

similarly caused the cessation" of the Malaysia Project, Joint App'x at A358. The district court did not abuse its discretion in finding that Goldman's speculation was insufficient to provide reasonable factual support for the amended complaint's specific allegation.

Second, Paul was not entitled to rely on discovery to justify bringing claims with no factual basis. An attorney may use discovery to bolster evidence. *See* Fed. R. Civ. P. 11(b)(3) (requiring that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"); Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("[S]ometimes a litigant may have good reason to believe that a fact is true or false but may need discovery . . . to gather and confirm the evidentiary basis for the allegation."). However, as the advisory committee note makes clear, having "good reason" to believe the truth of an allegation is still a threshold requirement of filing a paper. To that end, an attorney may not rely on discovery to manufacture a claim that lacks factual support in the first instance. *Id.* ("Tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties, make claims, or present defenses without any factual basis or justification.").

On appeal, Goldman and Klatz press that Kuo refused to "reveal names and details regarding the decisions of the Chinese governmental authorities at issue unless the information was exchanged in accordance with [Chinese] law" and "international process." Appellants' Br. 11, 13–14. Paul concluded that it would be impossible to use the applicable international discovery devices until after the complaint had been filed. *Id.* at 12. However, Paul's confidence that "substantiation . . . would ensue" upon discovery, *id.* at 13, did not relieve him of

6

his Rule 11 obligation to include only factually supported allegations in the complaint. Nor did it avail him of Rule 11's allowance for claims that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery" because, as discussed above, the district court concluded he lacked good reason to believe the China Project and Malaysia Project allegations were true when he filed the complaint. As such, Paul could not have reasonably thought it "likely" under Rule 11 that factual support would be forthcoming with discovery. *See* Fed. R. Civ. P. 11(b)(3).[2]

We also conclude that the district court did not abuse its discretion in imposing a sanction of $10,000 on Paul. If a party violates Rule 11, the district court "may impose an appropriate sanction." Fed. R. Civ. P. 11(c)(1). That sanction may be "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). "Rule 11 sanctions are often punitive or aimed at deterrence." *Cooper v. Salomon Bros. Inc.*, 1 F.3d 82, 85 (2d Cir. 1993). However, any monetary sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

Despite Goldman and Klatz's assertion to the contrary, the district court had ample basis to impose the monetary sanction it chose. *See generally* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment (listing factors courts may consider in setting an appropriate sanction).[3]

---

[2] Even if these allegations were within Rule 11's allowance for claims requiring corroboration by discovery, Goldman and Klatz did not comply with the Rule's requirement that such allegations be "specifically so identified." Fed. R. Civ. P. 11(b)(3). Paragraphs 49–54 of the amended complaint, which contain the relevant allegations regarding the China Project, were not prefaced as being made on information and belief, and contain no "specific[]" reference to the need for additional factual support from discovery.

[3] These factors are "[w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended

Among other things, it found that the improper allegations infected the entire pleading.    Second, the "responsible person" was "trained in the law."    *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.    And third, the district court took full account of what sanction would fulfill Rule 11's deterrence goal in light of Paul's financial situation.

Moreover, the district court's determination of the appropriate sanction was measured and reasonable, consistent with its obligation to impose sanctions with discretion.    Even after excluding the components of Barrett's requested sanction it viewed as impermissible — the cost of the appeal, the cost of briefing the motion to dismiss the amended complaint, and a proposed punitive sanction — the district court still reduced the sanction by two-thirds on account of Paul's financial situation.    In short, the district court did not abuse its discretion in imposing a sanction of $10,000.

*        *        *

We have considered Goldman and Klatz's remaining arguments and find them to be without merit.    Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants."    Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

8